TOWN OF SOMERSET ET AL. *v.* COUNTY COUNCIL FOR MONTGOMERY COUNTY ET AL.

[No. 294, September Term, 1961.]

44

*Decided June 7, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*R. Robert Linowes,* with whom was *William M. Cave* on the brief for appellants.

*Richard J. Sincoff, Assistant County Attorney,* with whom was *Alfred H. Carter, County Attorney,* on the brief, for Montgomery County Council, part of appellees.

*Norman M. Glasgow,* with whom were *Wilkes & Artis,* and *William A. Linthicum, Jr.* on the brief, for Chevy Chase Land Co. of Montgomery County, other appellee.

HAMMOND, J., delivered the opinion of the Court.

The zoning reclassification of land in rapidly growing Montgomery County which is challenged in this appeal was supported and opposed with equal vigor and earnestness before the County Council, the Circuit Court and this Court. The applicant for the rezoning prevailed before the Council and the lower court and will prevail here.

Since 1890 The Chevy Chase Land Company has owned a block of land (Block 11) with a frontage of 1,000 feet along the east side of Wisconsin Avenue and a depth of 250 feet to Belmont Street, between Montgomery Street to the south and Oliver Street to the north.

The tract has been zoned residential (R-60, for detached houses), as has the adjacent land, since zoning began in the

County in 1928, although it is apparent the company long has been holding the land for commercial development.[1] In late 1960 the Land Company leased Block 11 for twenty-five years, with rights to renewals, to Saks Fifth Avenue, a specialty department store company. Saks proposed to erect an attractive structure with off-street parking and appropriate landscaping and screening, if the required rezoning, to which the lease was subject, was granted.

The Land Company applied to the County Council to have 250 feet of its Wisconsin Avenue frontage in Block 11, with a depth of 200 feet, changed from its residential classification to C-2, which is general commercial. It proposed to utilize a customary and accepted technique of Montgomery County zoning by having only the area to be covered by the commercial building zoned commercial, with the adjacent land remaining residential, subject to a special exception for off-street parking being granted by the Board of Appeals, which can impose conditions as to ways of ingress and egress, screening and landscaping, all for the protection of the surrounding area and property owners.

The Technical Staff and the Planning Board of the Maryland-National Capital Parks and Planning Commission recommended approval of the application (with a 10-foot setback), stating that the rezoning would be a logical extension of the extensive existing commercial development at Wisconsin Circle, based upon the premise that all of the block not rezoned commercial would be the subject of an application to the Board of Appeals for a special exception for off-street parking.

After a full hearing at which lay and expert witnesses appeared for the applicant and for the protestants (including the Town of Somerset and a number of aggrieved individual property owners), and presented conflicting opinions as to the

---

1. The company owned the nearby blocks and as lots were sold off, there was inserted in each deed a recital that the block here involved was reserved for commercial use and a covenant that the grantees and their successors in title would not oppose rezoning for commercial purposes. The covenant is widely applicable in the area adjacent to the land here involved.

propriety of the rezoning and the effect on traffic and congestion in the streets, the County Council, by a vote of four to two, approved the rezoning, and on petition for reconsideration affirmed its action.

On appeal the Circuit Court found from the voluminous record that the finding of the County Council, sitting as a District Council, was fairly debatable and therefore not arbitrary, discriminatory or illegal.

The appellants contend that the evidence of change in the neighborhood was insufficient to overcome the strong presumption of validity of original zoning, that the rezoning was illegal spot zoning, that the rezoning would increase traffic congestion, and that the County Council's action in rezoning violated Sec. 107-39 c of the Montgomery County Zoning Ordinance (which prohibits zoning action which is conditional or for a particular use or for a particular user).

It is agreed by all parties that there was no mistake in zoning Block 11 residential in the original zoning in Montgomery County in 1928. In 1954 a new comprehensive zoning ordinance and zoning map were adopted which again classified the property as single family, detached residential. In 1957 the Maryland-National Capital Parks and Planning Commission promulgated "A General Plan for Development of the Maryland-Washington Regional District," which put the property in a residential classification.[2] Change in the neighborhood is relied on by the Land Company to support the rezoning sought.

The appealing protestants answer that under our decisions in *Trustees v. Baltimore County,* 221 Md. 550, 561, and *McBee v. Baltimore County,* 221 Md. 312, 317, a comprehensive rezoning is entitled to the same presumption of correctness as an original zoning and the so-called "change or mistake" rule applicable to piecemeal zoning is not controlling, and that,

---

2. The Montgomery County Council reproduced in its brief a zoning and highway map of the "Preliminary Master Plan for West Chevy Chase and Vicinity," dated February 1962, which has been proposed by the Maryland-National Capital Parks and Planning Commission. On this map C-2 zoning is proposed not only for the subject property but for some twelve additional acres contiguous thereto.

therefore, only changes in the area since 1954 are significant.

We reaffirm the rule that comprehensive rezoning is entitled to the same presumption of correctness as is original zoning, but we think the appellants seek to press their argument based thereon further than our decisions dealing with the problem warrant. Changes which may have occurred prior to the last comprehensive rezoning need not be wholly disregarded when a change from that zoning is under consideration. It may be—as was the case here—that it was a rather close question in the minds of the officials concerned whether a change in the zoning of the land involved should not have been made at the time of the last comprehensive zoning, and additional changes thereafter may bring the zoning status of the land as to which action is sought over the line dividing different zones.

We said in *Muhly v. County Council*, 218 Md. 543, 546 (in referring to the 1928 and 1954 Montgomery County general zoning ordinances):

> "It is true that the readoption of a map and plan, without change as to a particular property, is entitled to the presumption that it was a deliberate confirmation of the earlier decision, but since it is the cumulative effect that may be decisive, we think changes between the time of the initial zoning and the confirmation should not be wholly disregarded."

In *Muhly* we referred also to the case of *Nelson v. Montgomery County*, 214 Md. 587, 594, in which there were taken into account a number of changes which had occurred between the time of the original zoning under the 1928 law and 1955, the date of the hearing. The County Council was entitled, as we see it, in deciding whether the neighborhood had changed significantly since 1954, to take into consideration the changes between 1928 and 1954.

There was testimony that after 1928 and before 1954 there had been many changes to commercial (often with adjacent residential land being given a special exception for off-street parking in connection with the commercial use) "in the neigh-

borhood a short distance south on Wisconsin Avenue," to use the words of the findings of the County Council. These included a bus interchange and terminal of the Capital Transit Company, a Howard Johnson Restaurant, the Woodward & Lothrop Department Store, the Lord and Taylor Department Store (just over the District of Columbia line but considered a part of the commercial complex at Wisconsin and Western Avenues) and the Chevy Chase Shopping Center, with its numerous stores (on the northeast quadrant of the intersection of Wisconsin and Western Avenues). The southern line of the subject property is about 325 feet from the Montgomery Street entrance to the parking lot of the Chevy Chase Shopping Center. The distance from the southern line of that part of Block 11 to be zoned C-2 to the northern part of that part of the Chevy Chase Center which is zoned C-2, is approximately 925 feet. If the applicant be granted a special exception for off-street parking, as it proposes, shopping and parking facilities would extend uninterruptedly (except for Montgomery Street, a paper street in existence on the ground only far enough to serve as an entrance to the shopping center parking lot) from the Chevy Chase Shopping Center north to Oliver Street, the northern boundary of Block 11.

The frontage on the west side of Wisconsin Avenue between a point opposite the Land Company's tract and the District line has a mixture of zoning—C-2, C-1, Local Commercial, R-40, One Family semi-detached and Two Family detached, and R-60. Directly opposite is an undeveloped thirty-acre tract zoned R-60 (the Bergdoll tract), five houses used as tourist homes and three deteriorating residences. In 1955 two lots on the west side of Wisconsin Avenue less than 1,000 feet away were changed from R-60 to C-1 (Commercial). In 1958 the Government Employees Insurance Corporation erected a large office building, with parking facilities, on the north side of Western Avenue extending through to Willard Avenue (which runs into the shopping complex).

We agree with the trial court that the record shows that the questions before the County Council were at least fairly debatable and that its action in rezoning part of Block 11 C-2, based on its findings (a) that there had been changes in the

neighborhood sufficient to justify the rezoning, (b) that the rezoning would have no detrimental effect on nearby residential properties, (c) that it would not produce traffic hazards or congestion and (d) that it would be an appropriate extension of the commercial area to the south on Wisconsin Avenue, was not arbitrary, discriminatory or illegal. *Overton v. Co. Commissioners*, 225 Md. 212, 218-219; *Baltimore v. N. A. A. C. P.*, 221 Md. 329; *St. Mark's, Etc., Church v. Doub*, 219 Md. 387, 394; *Missouri Realty, Inc. v. Ramer*, 216 Md. 442; *Wakefield v. Kraft*, 202 Md. 136.

The contention of appellants that the action complained of was illegal spot zoning is largely answered by what has been said. The Technical Staff and the Planning Board found the rezoning a logical extension of the existing nearby commercial area. The Council agreed and the testimony in the record, including expert opinion that Block 11 was not suitable for residential development, permitted the finding of the Council. There was evidence that the rezoning was in the interests of public health, safety and welfare, and the Council found that it would aid in the accomplishment of a coordinated, comprehensive and systematic development of the Maryland-Washington Regional District. In addition to the testimony of non-suitability for residential use and suitability as a logical extension of existing commercial uses, there were showings that the proposed development would produce substantial annual revenues for the County (and the State) and that it would not depress the value of the homes nearby. There was no evidence produced to the contrary. The Village of Chevy Chase, the area of single family homes most likely to be affected, supported the rezoning.

We turn to the contention of appellants that the rezoning was conditional or for a particular use or user. No condition was requested or recommended by the Planning Commission and neither the findings in the opinion of the Council nor its resolution make the rezoning contingent upon a particular use or a particular user or imposed any condition. The appellants say that all the evidence was as to use of Block 11 by Saks. The Council was told by the landowner at the outset of the

hearing that in recognition that rezoning in Montgomery County cannot be conditional, the evidence to be adduced, although aimed at showing the propriety of the use Saks proposed, would be representative of a particular intense commercial use and sufficiently typical to be relevant in considering whether C-2 zoning was appropriate. This approach would not seem to be improper.

The appellants argue further that a particular use and a particular user were the basis for the rezoning because the Land Company entered into an agreement with the Village of Chevy Chase (which proposed to annex Block 11 if the rezoning were granted) that if the site were not developed as suggested it would apply for rezoning back to R-60.

In *Pressman v. Baltimore*, 222 Md. 330, 344-345, the Planning Commission of the City of Baltimore and the landowner and prospective users entered into an agreement to develop the property sought to be rezoned according to agreed plans, and, if this were not done, to take action to have the property rezoned to existing classifications.

The rezoning ordinances of the City Council made no references to the agreement. We upheld the rezoning, saying:

> "On the contrary, in the circumstances of the present case, it would, in our judgment, be merely speculative to impute to the legislative body an intention to impose conditions or to make them the basis of its action in rezoning the property."

See also *Overton v. Board of Co. Comm.*, 223 Md. 141, 145-146.

In the case now before us, the County Council affirmatively spelled out that it did not either impose conditions or limitations as to use or user nor make them the basis of its action in rezoning. It said in its opinion:

> "At the outset, the Council wishes to make it clear that the reputation of the applicant and its proposed development of the subject property cannot control this decision, which is based upon objective principles of zoning and the relevant evidence adduced at the hearing."

We think *Pressman* is controlling and find no violation of the Montgomery County Code proscription of conditional zoning.

Montgomery County moved to dismiss the appeal by the Town of Somerset for the reason that it was not a person aggrieved and had no standing. It is conceded that there are individual appellants with standing and that the appeal had to be decided on the merits. At the argument we were told by appellants that the Town was—and at all times here pertinent had been—the owner of record of a lot, which if owned by an individual would make that individual an aggrieved person entitled to appeal. There was no refutation of this claim of ownership. Without reaching the question of whether the Town would be a proper appellant if it did not own the lot, we think that under the circumstances it had standing to appeal.

*Motion to dismiss appeal of town of Somerset denied; order appealed from affirmed, with costs.*