## SHADYNOOK IMPROVEMENT ASSOCIATION, INC. ET AL. v. MOLLOY

[No. 330, September Term, 1962.]

266

*Decided July 12, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*John H. Hessey, IV,* with whom were *Hessey & Hessey* and *Mahlon W. Hessey* on the brief for appellants.

*Kenneth C. Proctor,* with whom were *Proctor, Royston & Mueller* on the brief for appellee.

BRUNE, C. J., delivered the opinion of the Court.

In this case neighboring property owners and a neighborhood improvement association [1] appeal from an order of the Circuit Court for Baltimore County affirming the action of

---

1. The standing of this association to maintain this appeal is not apparent. *Southland Hills Improvement Assn. of Baltimore County v. Raine,* 220 Md. 213, 151 A. 2d 734. There are other proper parties appellant and there has been no motion to dismiss the appeal of the improvement association, though its capacity to appeal from the action of the Board was challenged in the trial court. The appeal of the other parties at least is properly before this Court. See *Sullivan v. Northwest Garage, Inc.,* 223 Md. 544, 165 A. 2d 881. Cf. *Town of Somerset v. Montgomery County,* 229 Md. 42, 181 A. 2d 671.

the County Board of Appeals in granting the appellee's application for the rezoning of a tract of 4.7 acres of land in the Catonsville area from "R-6" to "R-A." The R-6 zone in Baltimore County is for one or two-family residential use, with an area of 6,000 square feet for a one-family dwelling and of 10,000 square feet for a two-family dwelling. The R-A zone is for residential use as apartments. The R-G zone, which is also mentioned in this case, is for group house dwellings and is intermediate between R-6 and R-A.

The property here in question is roughly triangular in shape. It lies on the westerly side of Maiden Choice Lane, to the south of a development known as Tanglewood (where the individual protestants own property), and to the north and east of a branch railroad line which curves around it. The railroad usually operates one train (a very short one) in each direction for five days a week, and the train is operated at a low speed. Tanglewood is zoned as R-6, and is a development of attractive houses of the cottage type. Three lots fronting on Maiden Choice Lane which were originally a part of the subject tract have also been developed by the construction of houses of similar type. All of the nearby property west of Maiden Choice Lane and east of the Beltway is zoned R-6 or is publicly owned, mainly by Baltimore County, which has acquired its land in the vicinity for school purposes. On the east side of Maiden Choice Lane opposite the subject property and extending about 200 feet north of it is a narrow strip zoned as R-6, which is occupied by residences which, in outward appearance, are of a cottage type similar to the homes in Tanglewood. Actually, they are single-entrance, two-story apartments, for occupancy by one family on each floor. Behind them, to the east, is a larger tract zoned as R-G, upon which two-story, four-family apartments have been built. To the east, northeast, and southeast of these apartments is a rather large national cemetery, the southwest corner of which projects to the northeast intersection of the branch railroad line and Maiden Choice Lane. It has a frontage of perhaps a hundred feet on Maiden Choice Lane opposite the southeast corner of the subject property. Also on the east side of Maiden

Choice Lane and to the south of the subject property are two pieces of property, one of which is owned by the City of Baltimore and is used for a school, and the other of which, containing over a hundred acres, is owned by St. Charles College. There is another institutional property on the west side of Maiden Choice Lane a little to the south of the appellee's property. This belongs to a convent of a cloistered order. Both the College and the convent were among those protesting the change of zoning of the subject property.

The whole area here involved was rezoned on April 5, 1960, in accordance with a comprehensive zoning map then approved by the County Council, and the subject property was thereby continued in an R-6 zone. The appellee filed his petition for rezoning on October 15, 1961 (which was about as promptly as he could do so), it was denied by the Zoning Commissioner on December 4, 1961, after due notice and a hearing, and it was approved by the County Board of Appeals, also after due hearings, on August 16, 1962, by a 2-1 vote of the Board. The order of the Circuit Court affirming this action of the Board was filed on December 5, 1962. The appellee concedes that there has been no change in the neighborhood since April 5, 1960, which would warrant a change in zoning, and the ultimate question upon which the case turns is whether there was an error on the part of the County Council in zoning the tract in question as R-6 in April, 1960. The Zoning Commissioner found that there had not been and one member of the Board of Appeals agreed with him. One of the others flatly disagreed and held that there had been an error in the 1960 rezoning. The third member, the Chairman, in a separate opinion, which is actually rather equivocal on the question of error, concluded that the application for rezoning should be granted. The Circuit Court filed an opinion holding that there had been substantial evidence before the Board of error in the 1960 rezoning and that its action was therefore not to be upset by the court, and entered the order appealed from affirming the Board's action.

The appellee concedes that under the well established rule in this State, there is a strong presumption of the correctness

of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or in the comprehensive rezoning or else of a substantial change in conditions. See, for example, *Hewitt v. Baltimore County*, 220 Md. 48, 57, 151 A. 2d 144; *McBee v. Baltimore County*, 221 Md. 312, 315-17, 157 A. 2d 258; *Trustees of McDonough Educational Fund & Institute v. Baltimore County*, 221 Md. 550, 560-61, 158 A. 2d 637; *Town of Somerset v. Montgomery County*, 229 Md. 42, 48, 181 A. 2d 671; *George F. Becker Co. v. Jerns*, 230 Md. 541, 545, 187 A. 2d· 841. Since it is also conceded that no question of changed conditions is involved, we shall confine ourselves to alleged mistake in the 1960 rezoning.

The appellee's claim that there was error in the zoning of his land in the 1960 comprehensive rezoning rests upon these contentions: (a) that the areas across Maiden Choice Lane, upon which apartment buildings had been erected, were improperly zoned as R-6 and R-G and should have been rezoned as R-A to conform to their actual use; (b) that the school property owned by the City of Baltimore to the east of Maiden Choice Lane should have been shown on the 1960 zoning map submitted to the Council as publicly owned [the map is so marked and colored as to suggest institutional, and not public, ownership] and should not have been so marked or colored as to show a part of it zoned as R-6 and a part as R-10; (c) that the subject tract is not suitable for R-6 development, because of its shape and topography and because of the railroad line running along its southwest side; (d) that there is a need for apartments in this area and (e) that there is a large amount of publicly owned or institutionally owned land in the immediate vicinity. Upon these premises it is argued that if the new zoning map as submitted to the Council by the planning authorities had shown (as it should have) the property east of Maiden Choice Lane used for apartments as zoned for such use, and had shown the school property owned by the City as so owned, and if the Council had given due weight to these factors as they should have been shown and to the unsuitability of the subject land for R-6 use, then

the Council should and would have zoned the appellee's land as R-A, instead of R-6; and the R-6 zoning was, therefore, in error.

We shall now consider the appellee's more or less secondary grounds of attack on the 1960 rezoning.

First, with regard to the school property owned by the City of Baltimore on the east side of Maiden Choice Lane, it is by no means clear that the Council actually was unaware of the presence of this school (one of the Council members lived in the vicinity); but assuming *arguendo* that the Council was unaware of its existence and was misled by the map into thinking that the property was institutionally owned and not publicly owned, and was zoned partly R-6 and partly R-10, the matter seems to us inconsequential.

Second, there has been an effort to make much of the proximity of the little used railway freight line along the southwest side of the appellee's triangular piece of property and of the obstacle which it is said to present to the use of the land for R-6 development because of the hazard to children. One switching train a day operated five days a week at low speed between the main line junction and a few plants or institutions along the weed-grown track does not impress us as creating a great hazard, and whatever hazard there may be can readily be obviated completely by the erection of a fence. See *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 178, 126 A. 2d 621, where the existence of a lake was said to constitute an extreme hazard to children. This Court pointed out that any such hazard could be obviated by putting up a fence, and rejected a contention that the existence of the lake with its attendant alleged hazard showed any error in the original zoning for residential use of the land for which reclassification was there sought.

Third, the alleged unsuitability of the shape and topography of the subject property for R-6 development is without substantial evidence to support it. The land might require the use of a cul-de-sac road. It is generally flat, though it does drop off slightly to the railroad line. Neither the possible need for a cul-de-sac road nor the slope, nor the possible need for

a fence along the railway line, prevents the reasonable use of the property for R-6 development. That there may be a need for additional apartments in this immediate vicinity (a claim which is disputed) fails to show anything more than that an R-A use would be more profitable than an R-6 use; and the same observation is also applicable to the fence, the cul-de-sac road, and the slope. None of them singly, nor all of them together, show that the R-6 zoning deprives the owner of any reasonable use of his land; and there is thus no taking of the appellee's property in the constitutional sense which would invalidate the R-6 zoning (as to which see *City of Baltimore v. Cohn*, 204 Md. 523, 105 A. 2d 482). Nor is the fact that the property might be put to a more profitable use under another zoning classification sufficient to show a mistake in its existing zoning. See *Hardesty v. Baltimore County, supra; Renz v. Bonfield Holding Co.*, 223 Md. 34, 43, 158 A. 2d 611, and cases therein cited on this point.

The main thrust of the appellee's argument is that R-A zoning should have been applied in the apartment area across Maiden Choice Lane and that it should have been carried over to his property on the west side of that street. It is by no means clear that the Council was in fact ignorant of the existence of the apartments to the east of Maiden Choice Lane or that it was in fact misled with regard thereto by the zoning map submitted by the planning officials. Even if we assume, as the appellee contends, that the Council was in error or was misled with regard to this matter, it does not necessarily follow that there was any error or mistake in its zoning of the property to the west of this street as R-6. The existence of apartment uses on the east side of the street does not alter the use of the land on the west side, nor does it make the street an inappropriate line of demarcation between apartment type residential use on one side and cottage type residential use on the other. It hardly needs to be said again that in zoning a line of demarcation must be drawn somewhere.

Here the evidence is clear that in the rather large area in the immediate vicinity of the subject property west of Maiden Choice Lane, all of the property north of Wilkens Avenue, east of the comparatively recently built Beltway and up to

approximately a block south of the Frederick Road is zoned R-6, except such as is institutionally or publicly owned land. We think that the evidence indicates that all of the land west of Maiden Choice Lane publicly owned in April, 1960, was shown as being in such ownership by the 1960 zoning map approved by the Council, though it seems that some relatively small tracts may have been acquired by the County for school use since that map was prepared.

The appellee lays stress upon the existence of an unusually high percentage of publicly or institutionally owned land in the neighborhood. Its precise significance as to the correctness or incorrectness of the zoning of the tract in question is not readily apparent to us. The fact that there was a considerable amount of land so owned is clearly shown by the zoning map and must have been known to the County Council.

The fact is, as the appellants strongly urge, that the rezoning of the subject property as R-A would create the entering wedge of such zoning in the tract above described between Maiden Choice Lane and the Beltway. Boundaries, as we have said, must be drawn somewhere, and that street appears to be a logical or natural place at which to draw the dividing line in this area. To grant the reclassification here sought would, in our view, amount to improper spot zoning which would be inconsistent with the comprehensive plan for this area shown by the 1960 rezoning map. See *Hewitt v. Baltimore County* and *George F. Becker Co. v. Jerns,* both cited above.

We hold that the heavy burden resting upon the appellee to show error on the part of the legislative body, the County Council, in the comprehensive rezoning applicable to the property here involved has not been met; and accordingly we must reverse the order of the Circuit Court, and remand the case with directions to reverse the action of the Board of Appeals and to reinstate the action of the Zoning Commissioner, which denied the appellee's application for reclassification.

> *Order reversed and case remanded for further proceedings in accordance with this opinion; the costs to be paid by the appellee, Lawrence W. Molloy.*