PETER JAY ET AL. *v.* CAROLYN FIELDER SMITH ET AL.

[No. 290, September Term, 1976.]

*Decided February 2, 1977.*

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Charles B. Keenan, Jr.*, for appellants.

*Cypert O. Whitfill*, with whom was *Elwood V. Stark, Jr.*, on the brief, for appellee Carolyn Fielder Smith. Submitted on brief by *John E. Kelly, County Attorney for Harford County*, and *Maurice W. Baldwin, Jr., Deputy County Attorney for Harford County*, for other appellee.

MENCHINE, J., delivered the opinion of the Court.

Carolyn Fielder Smith (applicant) applied for zoning reclassification from Agricultural, (A-1) to Suburban Residence District, (R-1) for 10 acres of land on the west side of Glenville Road, 3d Election District, Churchville, Harford County, Maryland. The 10 acres formed part of a farm of 278 acres (Fielder Farm) owned by applicant. Her application proposed a development for non-personal use comprising five lots of about 2 acres each. The proposed subdivision plat had been reviewed by the Planning Advisory Board, Development Advisory Board, Harford County Health Department and the Staff of the Department of Planning and Zoning. The planning staff and the Planning Advisory Board recommended the requested rezoning for the 10 acre tract.

Fielder Farm had been placed in the A-1 classification at the time that initial Harford County comprehensive zoning was enacted in 1957.

From that time until December 4, 1973, the A-1 classification permitted use of the land under § 7.012 of the Harford County Zoning Law as follows:

"Single-family and two-family (detached)

dwellings, and individual trailer for single family occupancy when located on an individual lot." [1]

By ordinance 73-42, effective December 4, 1973, § 7.012 was amended to change the permitted use of all land in Harford County to which the A-1 zoning applied so that the same read as follows:

"A. single-family or two-family detached dwelling or mobile home, *for personal use, and not for development, when located on a lot of not less than one acre.* If a property owner or developer petitions for rezoning to an "R" classification for subdivision purposes he shall submit a subdivision map for preliminary plan review so that both the subdivision and rezoning applications can proceed simultaneously." (Emphasis added.)

The ordinance contained a preamble reading as follows:

Legislative Intent. This subsection is designed to avoid lot splitting and circumvention of the proposed County Comprehensive Plan, the County Water and Sewer Plan and to prevent haphazard growth in Harford County. Pressure on agricultural land for urban development puts undue pressure on existing public facilities and creates problems of an urban nature that may be in conflict with agricultural conservation."

Otherwise stated, prior to December 4, 1973, the construction of five homes upon the 10 acre tract in question would have been a permitted use under the A-1 classification; but after that date such construction under the A-1 classification was forbidden except for the personal use of the owner of the land. Under the requested R-1 zoning, single family dwellings would be a permitted use.

On July 1, 1975, the County Council of Harford County

---

1. Minimum lot size under original ordinance: 20,000 square feet, with minimum width of 100 feet. § 7.05.

passed a resolution, providing, in part here pertinent, the following:

> "NOW, THEREFORE, BE IT RESOLVED, that the Harford County Council, by affirmative vote of 5-2, ratifies and adopts the Hearing Examiner's recommendation as its own final decision to approve the requested zoning reclassification based on the findings of fact and conclusions of law set forth in said recommendation; and
>
> "BE IT FURTHER RESOLVED, that the Harford County Zoning Map of 1966 be and hereby is amended according to the mandate of these findings of fact and conclusions; . . ."

The finding of facts and conclusions of law of the Hearing Examiner, in parts here pertinent, may be summarized as follows:

(a) the "neighborhood" affected by the proposed reclassification consisted of an area "within one (1) mile outside the perimeter of the Fielder Farm surrounding the subject property";

(b) that construction between 1957 and December 4, 1973, of 46 single family dwellings on lots of 20,000 square feet scattered within the defined "neighborhood" and construction of 25 dwellings in an area known as "Rolling Green," within that same time period and also within the defined "neighborhood," constituted a substantial change in the "neighborhood" that justified reclassification of the 10 acre tract from A-1 to R-1;

(c) that Glenville Road [2] was meant to accommodate local traffic only, but that the additional five residences "will not appreciably increase traffic in the area" or "create an adverse burden on the school or other public facilities available in the area."

Peter Jay and others [3] (protestants) appealed to the Circuit Court for Harford County. Harford County,

---

2. A tar and chip back road for travel between Darlington and Bel Air.
3. Lawrason Sayre and Jane H. Sayre; Mr. and Mrs. Melvin J. Carlson.

Maryland, permitted to intervene in the Circuit Court, urged affirmance of the resolution granting reclassification. The Circuit Court affirmed.

Protestants have appealed to this Court. They urge that the County Council and the Circuit Court (a) erroneously determined the "neighborhood"; (b) that the County Council and the Circuit Court improperly utilized as "changes" the construction of dwellings antecedent to ordinance 73-42 and (c) that the zoning of the 10 acre tract constituted "spot zoning."

### The Neighborhood

The surrounding area essentially is comprised of larger tracts of land (from 30 to 310 acres) with scattered smaller holdings ranging upward from 1.5 acres.

In *Pattey v. Board of Co. Commrs.*, 271 Md. 352, 317 A. 2d 142 (1974), it was said at 363 [148]:

> "We have said that the concept of a 'neighborhood' is a flexible one and will vary according to the geographical location involved; it being axiomatic that in rural or semi-rural areas, as in the case at bar, the 'neighborhood' will be larger and more fluid than in a city or suburban area."

We are persuaded that there is a reasonable basis for the finding of the hearing examiner — adopted by the County Council and the trial judge — that the "neighborhood" of the subject property is "the area within one (1) mile outside the perimeter of the Fielder Farm surrounding the subject property." We see no error in such a conclusion.

### Change

It is fundamental that piecemeal rezoning of land may not be had absent a showing of "mistake" in the legal sense, or "change" in the neighborhood of a substantial character. *Montgomery v. Bd. of Co. Commrs*, 263 Md. 1, 4, 280 A. 2d 901, 903 (1971).

In the subject case there is no evidence of mistake in original zoning.

We conclude that the basic issue for determination in this case is whether the construction of 71 single family dwellings within the defined "neighborhood" in the period between 1957 (the date of original zoning) and December 4, 1973 (the date upon which ordinance 73-42 took effect) may be considered as changes justifying rezoning of the subject tract.

The hearing examiner's position upon that issue was thus stated in the course of her opinion:

"Protestants contend 'that all the lots in the neighborhood of less than ten (10) acres which have been sold for the purpose of constructing dwellings for other than personal use since the adoption of the Zoning Ordinance, but before the effective date of Ordinance # 73-42 (December 1973) are evidence of nonconforming use' rather than changes in the neighborhood which may be considered as relevant to the petitioner's application for zoning reclassification. This Examiner disagrees with his approach to this aspect of zoning reclassification. The critical date for determining change is the date of the original comprehensive zoning plan, *Deblasis v. Vestry of Addison Parish and Dioceses of Washington, D. C., Inc.*, 184 A.2nd 840, 229 Md. 530. In some cases, the Court of Appeals has been even more liberal in its approach to time relevant to neighborhood changes. In *Town of Sommerset v. County Council for Montgomery County*, 181 A.2nd 671, 229 Md. 42, the Court of Appeals allowed consideration of changes between the time of the initial zoning and the time of the confirmation thereof, that is between 1928 and 1955, because the Council deemed it necessary to consider the cumulative affect of changes in the neighborhood on the application for rezoning. Ordinance # 73-42 amended Article 7.01, principal permitted uses in an 'A-1' agricultural district. The said amendment

thereto was a *use* regulation amendment of the County Zoning Ordinance rather than an amendment of the comprehensive zoning plan, which would allow an updating of the critical date relating to change in the neighborhood, therefore, the amendment date, as aforesaid is not controlling."

The trial judge implicity adopted that position, saying in the course of his opinion:

"The appellants' second allegation of error, that the record is devoid of evidence showing sufficient change in neighborhood to justify rezoning, fails for the reason given by the Court in *Wakefield, supra.*[4] A careful reading of the 287 page transcript of proceedings before the hearing examiner reveals that the record is hardly 'barren' of facts supporting the contention that there have been changes in the 'neighborhood'. The Court is of the opinion that the evidence presented to the hearing examiner on the issue of 'change', in the form of evidence of the number of houses built on lots of three (3) acres or less since 1957 in an area encompassed by the map which applicant said is her neighborhood, certainly meets the 'fairly debatable' standard."

We do not find such a position to be sound under the circumstances of this case. It is true that there are cases in which it has been said that "changes" antecedent to the last comprehensive rezoning may be taken into consideration, *along with other changes,* in the determination whether later piece-meal rezoning lawfully is permissible. In *Town of Somerset v. County,* 229 Md. 42, 181 A. 2d 671 (1962), it was said at 48 [674]:

"We reaffirm the rule that comprehensive rezoning is entitled to the same presumption of correctness as is original zoning, but we think the

---

4. Wakefield v. Kraft, 202 Md. 136, 96 A. 2d 27 (1953).

appellants seek to press their argument based thereon further than our decisions dealing with the problem warrant. *Changes which may have occurred prior to the last comprehensive rezoning need not be wholly disregarded* when a change from that zoning is under consideration. It may be — as was the case here — that it was a rather close question in the minds of the officials concerned whether a change in the zoning of the land involved should not have been made at the time of the last comprehensive zoning, *and additional changes thereafter* may bring the zoning status of the land as to which action is sought over the line dividing different zones.

"We said in *Muhly v. County Council*, 218 Md. 543, 546 (in referring to the 1928 and 1954 Montgomery County general zoning ordinances):

'It is true that the readoption of a map and plan, without change as to a particular property, is entitled to the presumption that it was a deliberate confirmation of the earlier decision, but since it is the cumulative effect that may be decisive, *we think changes between the time of the initial zoning and the confirmation should not be wholly disregarded.*'

In *Muhly* we referred also to the case of *Nelson v. Montgomery County*, 214 Md. 587, 594, in which there were taken into account a number of changes which had occurred between the time of the original zoning under the 1928 law and 1955, the date of the hearing. [5] The County Council was entitled, as we see it, in deciding whether the neighborhood had changed significantly since 1954, to take into consideration the changes between 1928 and 1954."

---

5. The Court of Appeals in Nelson pointed out that the protestants admitted that later changes also had taken place. 214 Md. at 594.

We are persuaded that the rationale of those cases has no applicability to the subject case.

Here, the preamble to ordinance 73-42 makes crystal clear that the haphazard "changes" — now urged in sole support of the subject reclassification — were the very events that were declared to be in "circumvention of the proposed county comprehensive plan" and had put "undue pressure on existing public facilities and creates problems of an urban nature that may be in conflict with agricultural conservation." To permit those antecedent events to serve as a foundation for this reclassification would be to subvert ordinance 73-42 and render its passage a mockery.

We find in this record no change in the "neighborhood" as would justify the proposed reclassification.

Our decision upon the issue of "change" being dispositive of this appeal, we do not reach the "spot zoning" contention of appellant.

Applicant, attempting to add a second string to her bow, urges that we should "hold that section 7.012 of the Harford County Zoning Ordinance as amended by County Council Bill 73-42 is invalid." The issue was not raised or decided below. We shall not consider it. Maryland Rule 1085.

> *Order reversed and cause remanded for the passage of an order consistent with this opinion.*
> *One half of the costs to be paid by each appellee.*