# CARDON INVESTMENTS *v.* TOWN OF NEW MARKET ET AL.

[No. 1704, September Term, 1982.]

*Decided October 5, 1983.*

574

The cause was argued before LOWE, BISHOP and ADKINS, JJ.

*John C. Murphy,* with whom was *Harry T. DeMoll* on the brief, for appellant.

*Peyton Paul Phillips* for appellees Town of New Market et al. *Judith A. Armold, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee Maryland Department of State Planning.

BISHOP, J., delivered the opinion of the Court.

Cardon Investments appeals a Frederick County Circuit Court order that overturned a rezoning of its land. The appellees are the Town of New Market (being approximately 350 persons residing in and about the Town of New Market) and the Department of State Planning (Department), intervenor in opposition to the rezoning.

### Facts

The subject property consists of 6.125 acres of vacant land located on the south side of Maryland Route 144 at its intersection with Maryland Route 75, immediately north of the Interstate 70 interchange. It is bordered on the east by vacant agricultural land, and on the north, west and south by State Roads Commission rights-of-way for Maryland Route 144, Maryland Route 75 and Interstate 70, respectively. The subject property is just outside the limits of the Town of New Market.

The case before us began its legal journey on October 9, 1981, when appellant filed its application for rezoning, to permit the site to be used for a truck stop. For the purposes of this appeal, it is necessary that we look to some history of the subject property and rezoning in Frederick County.

*1959* — The Board of County Commissioners adopted its first comprehensive zoning ordinance, which placed the subject property in zoning classification A-1, agricultural.

*1971* — At the request of the then property owner, Humble Oil Company, the property was re-zoned from A-1, agricultural, to B-2, community business zone. The B-2 classification permitted an "automobile service station"; however, the County Code defined only an *automotive* service station as "[t]hat portion of property where flammable or combustible liquids are stored and dispensed from fixed equipment into the fuel tanks of motor vehicles . . .". (Frederick County Code, section 40-1).

*1972* — Frederick County adopted a comprehensive land use *plan* with a "highway service commercial" classification, described as:

> "Highway Service Commercial (Purposes): To provide for vehicular transient services at major highway intersections.
>
> *Areas Classified:*
>
> 1. Intersections of major highways such as expressways, freeways and major arterial roads.
>
> 2. Intersections of highways between employment and residential areas.
>
> *Uses Permitted:*
>
> Service stations, lodging and accommodations, restaurants, *truck stop,* rest and picnic areas, specialized tourist-oriented retail commercial and convenience goods." (Emphasis supplied.)

When appellant filed for rezoning of its land in 1981, the staff report of the Planning Department of Frederick County commented:

"VI. *Relationship to the 1972 Comprehensive Plan.*

The published 1972 adopted Comprehensive Plan designates this site for Highway Service use. In addition, District and Regional Commercial Centers are designated in the 1972 Plan for this northeast quadrant of the I-70/Rt. 75 interchange.

The staff would note that the 1972 Plan filed in the Frederick County Courthouse includes an adopted Comprehensive Plan map ... calling for the extension of High Density Residential use south of Rt. 144, east of Rt. 75, on the western portion of the subject site. The remainder of this tract is shown as Rural Reserve. In the staff's opinion, this reflects a mapping error since the staff does not believe this area was intended to be designated Rural Reserve due to the intensity of uses planned around this site and the designation of Highway Service in the published Plan map."

*1977* — Frederick County adopted Ordinance No. 77-1-78 "to repeal and re-enact with amendments, Chapter 40, Title 'Zoning' of the Frederick County Code."

This ordinance designated May 11, 1959, instead of the date of the passage of the ordinance for determining any changes of mistakes required to be shown for purposes of rezoning. The ordinance also created the G.C. (General Commercial) and the H.S. (Highway Service) classifications.

*1981* — Appellant applied for a Zoning Certificate Building Permit to construct a truck stop. Because a "truck stop" was not explicitly referred to in the Frederick County Zoning Regulations, appellant sought and obtained an opinion by the Zoning Administrator providing that a truck stop was a permitted use in the G.C. classification. The Town of New Market appealed this interpretation to the Board of Appeals, which affirmed the Zoning Administrator. The Town then appealed to the Circuit Court.

While the above appeal was pending before the Circuit Court, the Board of County Commissioners enacted a zoning text amendment that defined truck stops and restricted them to the H.S. and light industrial classifications. The issue raised by the Town in the pending appeal became moot.

Appellant then applied for rezoning of the subject property from the General Commercial classification to the Highway Service classification, to permit the property to be used for a truck stop.

*1982* — The Board of County Commissioners passed Ordinance 82-2-246, which rezoned the property H.S. The Board agreed to rezone the site because:

1. The site was designated as H.S. on the 1972 comprehensive plan; and

2. Substantial change in the character of the neighborhood warranted reclassification of the property (the Commissioners adopted the staff report, which measured the change since 1959).

The Commissioners also found that there was no mistake in the 1977 zoning of the property in the G.C. classification.

The Town of New Market then appealed to the Circuit Court for Frederick County. At this time, the Department of State Planning (Department), which had not appeared before the Commissioners, filed a timely intervention and appeal from the reclassification ordinance, in accordance with Article 88C, section 2 (r) of the Maryland Code. An order of the Circuit Court for Frederick County dated May 4, 1982, designated the Department as a party.

On July 26, 1982, the circuit court reversed the action of the Commissioners, thereby denying the reclassification. This appeal is from the court's order of August 10, 1982, implementing that decision.

At the beginning of its oral opinion the circuit court pointed out that its function was to determine whether "the decision of the County Commissioners is erroneous as a matter of law," not to substitute its judgment for that of the County Commissioners. The court observed that it could not

make findings of fact, but could "conclude that there was not sufficient evidence before the Commissioners to make the findings that they did make."

When a local legislative body enacts a zoning ordinance, pursuant to powers granted by the Legislature, there is a presumption of validity, which applies with greater force original zoning than to rezoning. Where, however, "there is no room for reasonable debate, or a record barren of supporting facts . . . the Court can declare the legislative action" invalid. *Wakefield v. Kraft,* 202 Md. 136, 141-42 (1953).

This same standard is set out in *Howard County v. Dorsey,* 292 Md. 351, 355-56 (1982); *Boyce v. Sembly,* 25 Md. App. 43, 49-50 (1975); *Rockville v. Henley,* 268 Md. 469, 472-73 (1973). *See generally:* 6 R. Rohan, *Zoning and Land Use Controls,* §39.02 [3] (1983).

In the case *sub judice* the circuit court set out the authority of the County Commissioners, which "is limited to circumstances where there is sufficient evidence for them to conclude that the zoning was mistakenly applied in the original zoning or that there had been substantial changes in the character of the neighborhood to warrant the decision to make the change."

The circuit court, in its oral opinion, found that the record before it did not contain sufficient evidence of mistake or change in the neighborhood to justify the rezoning. Specifically, with regard to the change consideration date, it stated that:

1. In 1971 the Board of County Commissioners rezoned the property from an agricultural category to a commercial category. The property continued in that classification until the time of the current attempt to rezone. This caused "a truncating . . . of the circumstances or the necessity to view and consider changes prior to that date."

2. The fact that the 1972 plan classified the property of H.S. is irrelevant to the Board of County

Commissioners' determination to rezone in this case.

3. Textual changes in the 1977 ordinance created "refinements of the zoning classification", which in turn required designating on the map those areas where the textual changes applied. There was, accordingly, "a conscious determination to find the sites . . . appropriate for this highway service classification", but the subject property was not one of them.

4. As a result, the time for "a consideration of the change in the character of the neighborhood" was 1977.

With respect to evidence of mistake or change, the court stated:

5. The Commissioners made an express finding that there was no mistake in the general commercial zoning of the property in 1977.

6. The changes set out by the Commissioners going back to the date that the court deemed appropriate would not call for a reclassification, *e.g.,* — the nature, scope and location of the highway improvements had long been considered; their completion in 1974 is of "no telling consequences" in terms of the 1971 decision to place the property "in the commercial category . . .".

7. The availability of adequate sewer facilities is not significant, though the system, of course, should "be able to take care of the property."

8. The number of extensions of commercial zoning set out in the opinion of the Commissioners were "by their own findings . . . of the same character" as those that had previously taken place, or had been previously considered, and therefore "do not meet the test of the change in character [of the neighborhood]."

9. The only change of consequence that was in evidence before the Commissioners was the text change of 1981.

10. "Therefore, there is nothing to compel the conclusion that there has been such a change in the character of the neighborhood that it requires the rezoning."

The circuit court thus held that the date from which change in the neighborhood would be measured was not 1959, as provided in the 1977 ordinance, but 1977. Measuring from 1977 (or even 1971), the court found insufficient change to warrant rezoning appellant's property.

Appellant raises the following issues:

I. Did the court err in finding that the change should be measured from either 1971 or 1977, and not from 1959, as set out in the ordinance?

II. Did the court err in finding that there was not sufficient evidence of change in the character of the neighborhood to support the reclassification?

III. Did the court err in finding that the reclassification was not a proper exercise of legislative discretion based on the Frederick County comprehensive plan?

I.

*The Change Consideration Date*

Appellant argues that change should have been measured from 1959; it urges that the circuit court erred in treating the 1977 ordinance as a comprehensive rezoning, from which change must be measured. The 1977 ordinance, No. 77-1-78, contained the following provision, codified in the Frederick County Zoning Code as Section 1-19-67:

"§1-19-67. Legislative intent for change or mistake criteria for rezoning.

It is the legislative intent of the board of county commissioners that any changes or mistakes

required to be shown for rezoning subsequent to January 24, 1977, shall not be from such date, but changes in the character of the neighborhood or mistake in the existing zoning may be shown and considered as evidence by the board of county commissioners from the date of the original adoption of a zoning ordinance on May 11, 1959, or from the date of adoption of any future comprehensive regional zoning map amendment."

Appellant contends that a legislative intent to rezone comprehensively is a necessary precondition to application of the mistake/change rule. When, as here, the zoning authority expressly disavows such an intent, appellant concludes that a court cannot treat the rezoning as comprehensive.

## A.

"Comprehensive rezoning" is a term of art with a specific legal definition set out by the Court of Appeals in numerous cases.

In *Mraz v. County Comm'rs of Cecil Co.* 291 Md. 81, 88, 89 (1981) the Court stated that:

"The indicia of 'comprehensiveness' in zoning are well established. A comprehensive zoning or rezoning must be well thought out, the product of careful consideration and extensive study, and based upon considerations concerning the common needs of the particular area. It must be designed to control and direct the use of land and buildings according to present and planned future conditions, to accomplish as far as possible the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of the individual property owners. Other characteristics of comprehensiveness may be found in the fact that the zoning or rezoning applies to or covers a sub-

stantial or wide geographical area, that it regulates all uses, and that it covers all of the usual factors of land utilization: height, area and use. The fact that few changes in zoning are made does not affect the comprehensive nature of the zoning or rezoning. *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 702, 707, 376 A.2d 483, 492-93, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct. 1245 (1978)."

A statement of legislative intent is relevant to but not dispositive of whether a given rezoning is comprehensive. The reviewing court must look to the actual procedure used and provisions of a zoning ordinance to determine if it meets the definition of comprehensiveness set forth above. The following sections from the preamble to the 1977 ordinance evince the deliberation and broad regulation of uses characteristic of comprehensive rezoning:

WHEREAS, the Board of County Commissioners has considered the final recommendation of the Planning Commission entitled "Frederick County Proposed Zoning Ordinance", dated September 14, 1976, and

WHEREAS, the Board of County Commissioners proposed alternative changes to the Planning Commission recommendations, such changes being contained in a report entitled "Supplement To Frederick County Proposed Zoning Ordinance", dated November, 1976, and

WHEREAS, the Board of County Commissioners has held three (3) duly advertised public hearings on these proposed changes to the Zoning Ordinance and Map, and

WHEREAS, the Board of County Commissioners has considered all comments received from the citizens of Frederick County at said hearing and all correspondence received within the ten (10) day limit following said public hearings, and

WHEREAS, the Board of County Commissioners hereby state their purposes and findings for adopting a new Zoning Ordinance and Map as follows:

*Purposes and Findings*

*This Ordinance is the product of over one (1) year of studies, workshops and public hearings.* After conducting hearings and workshops in the various planning regions of the County at which all citizens were invited to and did submit their views on the various proposals, the Frederick County Planning Commission held eleven (11) public hearings and the County Commissioners conducted hearings on three (3) separate days on the new Ordinance and the various proposals considered.

There had been no comprehensive changes in the Zoning Ordinance Map and Text since 1959, at which time zoning was initiated in Frederick County. Since 1959, the County has experienced comparatively rapid growth; some 30,000 people have been added to the population; 51% of all new homes have been built since 1971. From 1959 to 1974, some 1,076 farms have been eliminated, representing some 83,130 acres.

Since the original enactment of zoning in 1959, the Zoning Map has undergone only piecemeal changes. During this past seventeen (17) year period there has been over 250 individual rezoning requests for changes and 160 of these requests have been approved. While almost every conceivable type of request has been approved — upzoning as well as downzoning, almost 100 of the approved Map changes involved taking land out of the Agricultural District. By virtue of these rezonings there has been over 6,000 acres or almost 10 square miles of land rezoned from agriculture to a more intensive residential, commercial or industrial classification.

> This new Ordinance provides for *zoning districts which would allow a more intense use of land,* establishes the relationship between the zoning districts and the areas designated for growth by the Comprehensive Development Plan, and increases the number of residential zoning districts from three (3) districts to six (6) districts, *allowing more diverse densities and housing types than in the previous Ordinance.* Since approximately 91% of the area of the County was and is in the Conservation Zoning District and the Agricultural Zoning District (approximately 25% and 60%, respectively), necessarily these districts received the most attention of the Planning Commission, its staff and the County Commissioners." (Emphasis added.)

The "Purposes and Findings" section continues with great specificity to set out the bases for the changes that were ultimately adopted. All but four of the changes recommended by the Planning Commission and its staff were adopted.

Based on the foregoing, we hold that the 1977 Ordinance meets all of the criteria set out in *Mraz, supra,* and was, indeed, comprehensive rezoning.

### B.

Given that the 1977 rezoning was comprehensive, appellant maintains that change since 1959 nonetheless should have been considered in determining whether to reclassify its land.

In *Jay v. Smith,* 34 Md. App. 538 (1977), we stated:

> "It is true that there are cases in which it has been said that 'changes' antecedent to the last comprehensive rezoning may be taken into consideration, *along with other changes,* in the determination whether later piece-meal rezoning lawfully is permissible. In *Town of Somerset v.*

*County,* 229 Md. 42, 181 A.2d 671 (1962), it was said at 48 [674]:

* * *

*Changes which may have occurred prior to the last comprehensive rezoning need not be wholly disregarded* when a change from that zoning is under consideration. It may be — as was the case here — that it was a rather close question in the minds of the officials concerned whether a change in the zoning of the land involved should not have been made at the time of the last comprehensive zoning, and additional changes thereafter may bring the zoning status of the land as to which action is sought over the line dividing different zones." *Id.* at 544-45 (Emphasis in original.)

In *Jay,* the preamble to the comprehensive zoning ordinance provided that the haphazard pre-ordinance changes

". . . were the very events that were declared to be in 'circumvention of the proposed county comprehensive plan' and had put 'undue pressure on existing public facilities and creates problems of an urban nature that may be in conflict with agricultural conservation.' To permit those antecedent events to serve as a foundation for this reclassification would be to subvert ordinance 73-42 and render its passage a mockery." *Id.* at 546.

Based on this statement of legislative rationale, we held that pre-ordinance changes in the neighborhood could not be considered to justify a reclassification. *Jay* establishes, then, that pre-ordinance changes may sometimes be considered, and that the contents of an ordinance may affect this consideration. *Cf. Runyon v. Glackin,* 45 Md. App. 457 (1980) (absence of preamble quoted in *Jay* allows consideration of pre-ordinance change).

It is well settled, however, that changes in the character of a neighborhood prior to adoption of comprehensive zoning may be considered only in conjunction with subsequent changes. *Chevy Chase Village v. Montgomery County,* 258 Md. 27, 43-44 (1970).

In the case *sub judice* the court concluded that the only change since 1977 was the 1981 text change and clarification that made a truck stop a legal use in the H.S. classification and, in effect, excluded it from the G.C. classification. This does not constitute a post-1977 ordinance change in the character of the neighborhood sufficient to permit examination of pre-1977 changes.

Moreover, the circuit court found that even if it considered changes before 1977, it did not have to look beyond 1971. The trial court opined:

> "We are not here dealing with a comprehensive rezoning that may have overlooked something, some changes. It would appear from this record a deliberate determination by the County Commissioners in 1971 to place this property in a commercial category and it has continued in that down to the present time, and it seems to me that there is a truncating, at that point, of the circumstances or the necessity to view and consider changes prior to that date."

We agree with the trial court's analysis. Since the Board of County Commissioners reclassified the property as commercial in 1971, and in effect reaffirmed that classification in 1977, there is a presumption of correctness in that classification and, therefore, no need to look for change before that 1971 action.

The provision in the 1977 ordinance mandating measurement of change from 1959 is distinguishable from the preamble that we gave effect in *Jay v. Smith, supra.* In *Jay,* the preamble described the Harford County Council's purpose: to prevent pre-ordinance changes from circumventing the county's proposed comprehensive plan, putting

undue pressure on public facilities, and conflicting with agricultural conservation. In this case, Frederick County's 1977 ordinance provided no justification for the 1959 change date.

When a local legislative body adopts what by legal definition is "comprehensive rezoning," it cannot either in the same ordinance or otherwise provide that it is not comprehensive rezoning, either by so stating or through a designation of the change/mistake date.

The locality's legislative authority to zone stems not from its own inherent police power, but from that power granted to the localities by state law. It is the state law which determines the extent of that power, and the terms under which it may be exercised in Maryland. Md. Ann. Code, art. 66, §4.01 (1978 repl. vol.). *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 309 (1979). State law defines what constitutes comprehensive rezoning, and what consequences flow from that designation. By definition, comprehensive rezoning is the product of thorough, deliberate consideration of extant facts and circumstances. *Howard County v. Dorsey,* 292 Md. 351, 363 (1982); *Mraz v. County Comm'rs of Cecil Co., supra,* 291 Md. at 88-89 (1981). When, as here, that definition is met, state law promotes the stability of land use by according the rezoning a presumption of correctness, rebuttable only by a showing of mistake or change in circumstances. Md. Ann. Code, art. 66B, §4.05 (a) (1978 repl. vol.). *Howard County v. Dorsey, supra,* 292 Md. at 355-56 (1982); *Hoy v. Boyd,* 42 Md. App. 527, 533 (1979); *Anne Arundel Co. v. Md. Nat'l Bank,* 32 Md. App. 437 (1976). *See generally* Comment, "Zoning Change: Flexibility v. Stability," 26 U. Md. L. Rev. 48 (1966); N. Williams, 1 *American Land Planning Law,* §6.06 (1974).

Given the deliberation with which the circumstances leading up to this comprehensive rezoning were examined, given that the conclusions reached from this examination were the basis for this comprehensive rezoning, and given the public policy favoring stability, it is legally mandated that the evidence of change or mistake be determined from

the date of this comprehensive rezoning. An earlier date would permit needless duplicative consideration of evidence before the rezoning, *e.g.*, evidence of change already considered and presumed to be considered prior to the rezoning. In addition, it would promote haphazard, piecemeal rezoning in contravention of public policy.

Applying state law, the court properly concluded that 1977 would be the date for considering change in the character of the neighborhood for the purpose of determining whether the requested rezoning should be granted.

## C.

Since the issue of the 1959 date was not raised before the Commissioners, appellant asseverates that this issue could not be raised for the first time in the circuit court. Appellant cites *Bulluck v. Pelham Wood Apartments,* 283 Md. 505 (1978) and quotes from that case:

> "As the Supreme Court stated in *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 91 L. Ed. 136 (1946):
>
> > 'A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.' "
>
> 283 Md. at 518-519.

As the Department points out, in *Bulluck* the issues the appellant attempted to raise in the circuit court were alleged procedural and evidentiary errors, as distinguished from substantive legal issues. 283 Md. at 518. It is significant that the Supreme Court in *Aragon,* in the sentence immediately preceding the one quoted in *Bulluck* (above), stated that "[t]he responsibility of applying the statutory provisions to the facts of a particular case was given in the first instance to the Commission." It is clear that in *Aragon,* unlike the

case before us, the issue was an evidentiary one and not a legal one.

The Commissioners' application of the 1959 change date was a mistake of law. So long as correction of that mistake did not necessitate the taking of additional evidence, it was within the power of the circuit court to correct the mistake and decide the case. Clearly, the court has the power to reverse an administrative action that is arbitrary, capricious, illegal or unconstitutional. *Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 395 (1979).

The courts must defer to the expertise of an administrative agency in the resolution of disputed questions of fact, *State Insurance Commissioner v. National Bureau of Casualty Underwriters,* 248 Md. 292, 299 (1967); however:

> "Mistaken interpretation of law, however arrived at, are held not to be within the exercise of sound administrative discretion and the legislative prerogative, but to be arbitrary and illegal." *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 521 (1975).

*See also Hammond v. Love,* 187 Md. 138, 143-44 (1946); *Mahoney v. Byers,* 187 Md. 81, 85 (1946); *Heaps v. Cobb,* 185 Md. 372, 385 (1946); *Hecht v. Crook,* 184 Md. 271, 280 (1945).

When a legislative body sits as a zoning board, its actions are those of an administrative agency and are judged accordingly. 7 R. Rohan, *Zoning and Land Use Controls,* §51.01[3]. Although the zoning hearing may be governed by laws actually passed by the same body when it sat as a legislature, it does not thereby gain any additional authority; it still acts as an administrative agency whose authority is limited by statute and case law. *Cf. Zellinger v. CRC Dev. Corp.,* 281 Md. 614 (1977).

The use of the 1959 date for establishing change was clearly based upon an erroneous conception of law and therefore was reviewable by the circuit court and by this Court.

## II.

### *Evidence of Change*

To obtain reclassification, appellant was required to show "that there was a substantial change in the character of the neighborhood where the property is located or that there was a mistake in the existing zoning classification." Md. Ann. Code, art. 66B, §4.05(a) (1978 repl. vol.).

There was an express finding by the Commissioners that the G.C. zoning of the property in 1977 was not a mistake. The only issue, then, for the circuit court to consider and for this Court to review is whether there were sufficient changes in the neighborhood to require reclassifying the property from the G.C. to the H.S. classification.

Based on our review of the evidence before the Board of County Commissioners — including the evidence of road building, available sewage facilities and extensions of commercial zoning since 1971 — we affirm the findings of the trial court that "there is nothing to compel the conclusion that there has been such a change in the character of the neighborhood that it requires the rezoning."

Appellant argues that it is unfair to charge it with having presented insufficient evidence of change since 1977 or 1971 when all participants at the hearing before the Board of County Commissioners believed the change date would be 1959. Appellant, however, had the motivation and opportunity to present evidence of *all* pertinent changes between 1959 and 1982. Even though the period of change was later constricted, appellant nonetheless had a fair chance to present evidence of change from 1971 to the date of the hearing.

## III.

Given that there was insufficient evidence of change since the 1977 comprehensive rezoning, appellant argues that the 1982 reclassification of its site into the Highway Service category was nonetheless a valid exercise of legislative

discretion. It alleges: that the 1971 rezoning from A-1, Agricultural, to B-2, Commercial, placed the property in a classification that permitted truck stops. By the enactment of the 1977 ordinance, the B-2 classification of the subject property was changed to the new GC-General Commercial classification, which, according to the 1981 interpretation of the Zoning Administrator, permitted a truck stop as a legal use. It was only then, in 1981, ten years after the 1971 commercial zoning and four years after the General Commercial Zoning, that the Board of County Commissioners passed a text amendment excluding truck stops from the General Commercial classification. After several months, the 1982 rezoning of appellant's land as Highway Service restored to appellant the right to use the site as a truck stop — a use that had already been permitted for four to ten years. Insofar as a truck stop was previously permitted, appellant urges that there is no need to show change in the neighborhood to justify the 1982 rezoning.

A "truck stop" is not a zoning classification, but a use within a classification, and one that was never explicitly placed in the zoning ordinance until the 1981 textual change. As we have pointed out, *supra,* in 1971, when the subject property was rezoned from the A-1, Agricultural, to the B-2, Community Business District zone, *automobile* filling stations were permitted in the latter zone (County Code, sections 40-89 (d) and 40-95). Also, it is significant that in 1971 the B-3, General Business District classification permitted as a legal use "trucking and motor freight station or terminal." (County Code, section 40-101, (n)(3)). In addition, although the B-2 classification permitted "automobile filling stations," the B-3 classification permitted "filling stations . . ." without reference to the limitation of "automobile" as contained in the B-2 classification. The County Code did not contain a definition of an "automobile service station" or a "filling station" or a "trucking and motor freight station or terminal." At that time the County Code defined only an "automotive service station" as "that portion of property where flammable or combustible liquids are stored and dispensed from fixed equipment into the fuel tanks of motor vehicles . . .". County Code, section 40-1.

In 1981 the Commissioners enacted Ordinance No. 81-29-219, the Zoning Text Amendment, which defined "truck stop and filling station service facility" as well as "motor freight terminal". This ordinance for the first time legislatively placed the "truck stop" use explicitly in the H.S. and light industrial classifications. In adopting that ordinance, the Commissioners approved the following as part of the preamble:

"... Prior to the filing of this application, there were no specific references to uses designed primarily for trucks and for the sale of motor vehicle fuels and the like for that type vehicle, although past and present Zoning Administrators had indicated that such uses could be included under the definition of automobile filling and service stations, which provided in part that buildings and structures used for the retail sale of motor vehicle fuels, oils and accessories included those type services to trucks and were allowed in the districts as provided in the Zoning Ordinance.

A hearing on the proposed amendment was held before the Frederick County Planning Commission and at that time the Staff submitted its recommendations providing for a definition for 'truck stop and filling station service facilities' and 'motor freight terminals' and recommended that the former be allowed with site plan approval in the Highway Service and General Industrial Districts and the latter as a permitted use with site plan approval in the Limited and General Industrial Districts. *To further clarify the matter, it was recommended that the definition of automobile filling and service station, as it existed in the Ordinance, be amended to clarify that that use does not include 'truck stops and filling station service facilities."* (Emphasis supplied).

It is clear from the foregoing that the Commissioners, in enacting the 1977 Comprehensive Rezoning Ordinance, did not intend to include the truck stop use in the automobile filling and service station use. If this were not correct, then there would have been no need to contain in the foregoing preamble that the ordinance "be amended to clarify that that use (automobile filling and service station) does not include truck stops and filling station service facilities."

We have stated in *Swarthmore Co. v. Comptroller,* 38 Md. App. 366, 373 (1977):

> "While subsequent legislative interpretation of a prior statute is not binding or controlling on the Court, *Crunkleton v. Barkdoll,* 227 Md. 364, 369, 177 A.2d 252, 255 (1962) a subsequent 'statute purporting to declare the intent of an earlier one might be of great weight in assisting a court when in doubt.' *United States v. Stafoff,* 260 U.S. 477, 480, 43 S. Ct. 197, 199, 67 L. Ed. 358, 361 (1923)."

This action of the Commissioners clearly superseded that of the Zoning Administrator and the Board of Appeals, since the passage of that ordinance by the Commissioners not only provided for the first time both a definition of "truck stop" and the zoning classifications in which it would be permitted, but it explicitly pointed out that the heretofore "automobile filling and service station classification . . . does not include truck stops and filling station service facilities."

Based on the foregoing we hold that the contention that the truck stop use had been permitted on this property since 1971 when it was rezoned from the agricultural to the community business classification fails.

There is no predicate, therefore, upon which appellant can base its rather exhaustive legal argument.

In the same vein, appellant suggests that because the 1972 Frederick County comprehensive land use plan proposed a highway service designation of the site, the Commissioners could rezone it H.S. ten years later without having to show a change in the neighborhood. This fails to

appreciate the distinction between planning and zoning. In *JMC Constr. Corp. v. Montgomery County,* 54 Md. App. 1, 7 (1983) we said:

> "It is important ... to distinguish between 'planning' and 'zoning.' The planning and zoning functions are different. As Judge Finan pointed out for the Court in *Chapman v. Montgomery County,* 259 Md. 641, 643 (1970):
>
>> 'A "Master Plan" is not to be confused as a substitute for a comprehensive zoning or rezoning map, nor may it be equated with it in legal significance .... The zoning as recommended or proposed in the Master Plan may well become incorporated in a comprehensive zoning map ... but this will not be so until it is officially adopted and designated as such by the District Council.' "

Of the 1977 ordinance, the circuit court observed that:

> "... as a result of certain textual changes in the ordinance there were refinements of the zoning classification and the need to place these on the map in designated zones, and from the staff reports in evidence and the reasons presented there were (sic) a conscious determination to find the sites that would have been appropriate for this highway service classification, and we have a record in 1977 of the designation of other properties for that purpose, and not even by way of example is it suggested that this property would be included in that."

Here the court is saying that in 1977 the Commissioners made a thoughtful and deliberate effort based on planning reports to designate those areas where the H.S. classification could be imposed, but the subject property was not one of those chosen for that classification.

Regardless of the plan's designation of the site, the comprehensive zoning determines the uses to which it can be

put, and necessitates a showing of change before it can be reclassified. The circuit court properly found insufficient evidence of change to warrant the rezoning.

*Judgment affirmed.*
*Costs to be paid by appellant.*