## ANNE ARUNDEL COUNTY, MARYLAND *v.* MARYLAND NATIONAL BANK

[No. 1167, September Term, 1975.]

*Decided July 28, 1976.*

The cause was argued before MORTON, J., and IRVING A. LEVINE, Associate Judge of the Court of Appeals and H.

KEMP MacDANIEL, Associate Judge of the Third Judicial Circuit, specially assigned.

*Charles Fred Delavan, Assistant County Solicitor*, with whom was *Michael R. Roblyer, County Solicitor*, on the brief, for appellant.

*Thomas M. Downs*, with whom were *Harry C. Blumenthal* and *Blumenthal, Goldsborough, May & Downs* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

In this zoning case, Anne Arundel County (the county) appeals from a circuit court order reversing a Board of Appeals' decision denying the request of Maryland National Bank (Maryland National) to rezone a 0.965 acre of ground from the R5 residential to the C3 commercial zoning classification. The result of the action taken by the Circuit Court for Anne Arundel County (Biener, J.) was to grant the requested rezoning. We reverse.

The subject property is located in the Third Assessment District of the county on the west side of Crain Highway, the east side of Old Stage Road and the north side of Mayo Road. Directly to the east, across Crain Highway, is a large C3 zoning district, part of which is occupied by a shopping center but the remainder of which, though containing two service stations, is yet dominated by noncommercial uses. South of the subject property, across Mayo Road, is a local retail zoning district (C1A) occupied by four small stores. To the west, across Old Stage Road, is a large R5 district developed as the Glen Burnie Park subdivision, a residential area. The entire area to the north, bounded by Crain Highway on the east, the Maryland Route 100 overpass and Old Stage Road, is likewise zoned R5, and within this area are two tracts which have recently been denied a requested change from residential to commercial zoning.

The subject property was initially placed in the HC (heavy commercial) classification by a comprehensive zoning law enacted by Anne Arundel County in 1952. No development,

however, occurred during the 20-year period which followed. In December 1972, after a 14-month series of preliminary studies, administrative hearings and court challenges, the county adopted a comprehensive rezoning which placed the subject property, as part of a larger 15 acre area, in the R5 category. Maryland National, which had negotiated a lease of the subject property, claims to have first learned of the rezoning action in May 1973, when it applied for a building permit for its proposed full-service branch bank with drive-in facilities. It then filed the rezoning request which culminates in this appeal.

In accordance with the zoning procedure prescribed for Anne Arundel County, the application was first scheduled for determination by the zoning hearing officer. At the hearing which he conducted, Maryland National declined to offer any testimony with respect to the application. No evidence having been presented in support of the rezoning, and the Office of Planning and Zoning having submitted a comprehensively reasoned recommendation against it, the hearing officer issued an order denying the request. Maryland National then appealed that decision to the Anne Arundel County Board of Appeals, which, sitting with only four members, split evenly. The effect of this action was to constitute a denial of the requested rezoning. On appeal by Maryland National to the circuit court, on the grounds that the reclassification to R5 was a mistake and resulted in a denial "of all reasonable utilization" of the property, the decision of the board was reversed. The court "[found] as a *fact* that the tract in question [was] *suitable* only for commercial use" and "that the subject tract was *unsuitable* for any of the uses listed under R-5, thus demonstrating that the appellant has been deprived of all reasonable use . . . ." (all emphasis added).

The county urges reversal here on these grounds:

1. The determination of the Board of Appeals that Maryland National had failed to present sufficient evidence that inclusion of the subject property in the R5 classification under the comprehensive rezoning constituted a mistake was, at the very least, fairly debatable.

2. The zoning action taken by the county was not such a deprivation of all reasonable use of the subject property as would amount to a violation of Maryland National's constitutional rights.

3. Maryland National failed to exhaust its administrative remedies by declining to present evidence before the zoning hearing officer, and thereby lacked standing to maintain any further appeals.

4. In making findings of fact, the circuit court exceeded the scope of judicial review applicable to zoning cases. Since we agree with the first two contentions, which alone compel reversal, we need not reach the remaining two.

## (1)

As in almost any appeal from the grant or denial of a rezoning request, we begin by recognizing certain basic principles. There is a strong presumption of correctness of original zoning and comprehensive rezoning, so that to sustain a piecemeal change therefrom, there must be produced strong evidence of mistake in the original zoning or a change in the character of the neighborhood. The burden of proving such mistake or change is a heavy one. Thus, when there is sufficient evidence before the rezoning body to render the issue fairly debatable, the courts may not substitute their judgment for that of the legislative agency. *Pattey v. Board of Co. Comm'rs*, 271 Md. 352, 359-60, 317 A. 2d 142 (1974); *Trainer v. Lipchin*, 269 Md. 667, 672-73, 309 A. 2d 471 (1973); *Stratakis v. Beauchamp*, 268 Md. 643, 652-53, 304 A. 2d 244 (1973); *Rockville v. Henley*, 268 Md. 469, 472-73, 302 A. 2d 45 (1973).

Precisely in what respect Maryland National believes the county erred when it comprehensively rezoned the subject property to the R5 classification is less than clear. As nearly as we can determine, the thrust of the argument focuses on the methodology which the county employed during the various administrative stages. Succinctly stated, it appears that when the proposed comprehensive rezoning map for the

Third Assessment District was issued and considered at public hearings in late 1971, a staff member of the Planning and Zoning Department discovered that the boundary line between the third and fourth districts had been incorrectly positioned on the zoning map. The result of this error was to exclude the subject property from the third district where it belonged. This oversight was corrected, however, in early 1972, and at all times during the various stages of the rezoning process which followed, the subject property was properly included in the third district map. One of the complaints Maryland National apparently makes in this regard is that it received no actual notification of the proposed rezoning. Nevertheless, because a part of the third district map, for reasons not here relevant, was subjected to a court challenge, Maryland National was afforded a brief opportunity, well before final adoption, to present its views to the county council in opposition to the residential classification.

In any event, Maryland National points to these alleged procedural defects, a claim which, as suggested, we find elusive, as the basis for its contention there was error committed in the adoption of the comprehensive rezoning. In effect, Maryland National argues that in some manner, the county failed to follow the proper procedures, although we discern no claim that there was a denial of procedural due process. The short answer is that the county complied with all procedural requirements imposed by statute or ordinance.

In regard to the showing which must be made to sustain the heavy burden of proving mistake in a comprehensive rezoning, there must be evidence to show that the assumptions or premises relied upon by the zoning body at the time of the comprehensive rezoning were invalid. Error can be established by showing that at the time of the comprehensive rezoning the legislative body failed to take into account then existing facts, or projects or trends which were reasonably foreseeable, so that the rezoning action was premised initially on a misapprehension. *Boyce v. Sembly*, 25 Md. App. 43, 50-51, 334 A. 2d 137 (1975); *see Rockville*

*v. Stone,* 271 Md. 655, 662, 319 A. 2d 536 (1974). It is clear that there is nothing in the procedures followed by the county council which remotely fits into the category of mistake or error, as those interchangeable terms are used in the Maryland zoning cases.

This is not even a case, therefore, where the question of mistake is fairly debatable and, consequently, an affirmance of the decision denying the requested rezoning is required. What this case presents is the total absence of any evidence that there was a mistake. In short, Maryland National fell far short of meeting the heavy burden which confronted it.

(2)

Maryland National's claim of confiscation finds no support in the record. It presented two witnesses. The first, a vice-president in charge of property management, testified as follows:

"Q. Zoned as R5, in your opinion, does this property have any reasonable value to your employer, the Maryland National Bank?

\* \* \*

"A. No. ... Under an R5 classification I can't conceive of Maryland National Bank having any use whatsoever for the property.

"Q. ... [D]o you have an opinion as to whether the R5 classification as imposed on this property affords a reasonable use to anyone?

\* \* \*

"A. From a development standpoint I would seriously doubt in my mind that that piece of property, because of its configuration, because of its placement in proximity to the other commercial development, because of the transitory nature of the general neighborhood, would have any kind of development possibilities under R5."

He further testified that Maryland National did not study the feasibility of putting the subject property to any use other than banking.

The other witness, a consultant in real estate development, planning, zoning and appraising, testified he did not believe that the subject property was:

> ". . . *suitable* by reason of its size, by reason of its location, and by reason of the other uses surrounding it for an R5 use. It is certainly not suitable for single-family housing. It would not be feasible to build four single-family houses on the property without having the values inhibited by the commercial vistas in various directions.
>
> "The property does not have a reasonable use in the R5 zone, keeping in mind a reasonable use is something that is equitable and fair, just and rational. . . .
>
> * * *
>
> "Q. The R5 does have other uses besides single-family residential? A. *Yes*, sir.
>
> "Single-family residential is the primary use for R5. Glen Burnie Park and Southgate are zoned R5.
>
> "The R5 category *does permit accessory uses* such as churches, home occupations, public park or playground, private swimming pools, private educational facilities, country clubs, I don't think it is *useful* for that purpose, a medical or dental clinic of which we have already a number in the area, and particularly down near the hospital.
>
> "I don't believe the property is *useful* in that sense or that there is a need for it. . . .
>
> "Special exceptions *are allowed* in R5 for child care homes but I don't see that as a use applicable to this property. Conversion to single family dwellings from duplexes and multi-family dwellings. I can't see it *used for a* mobile home park or a nursing center.

"Q. It would be fair to say that one could physically perhaps build one of these special exception uses on this tract of ground? A. One could physically build something there, yes." (all emphasis added).

The witness acknowledged that no study of the need for a medical or dental clinic had been made despite the location of a hospital only three-quarters of a mile away.

What this testimony amounts to is a few generalizations about economic infeasibility of the type which the Court of Appeals rejected in *Stratakis v. Beauchamp, supra,* 268 Md. at 654, and *Rockville v. Henley, supra,* 268 Md. at 476. As that Court said in *Baltimore City v. Borinsky,* 239 Md. 611, 622, 212 A. 2d 508 (1965):

"The legal principles whose application determines whether or not the restrictions imposed by the zoning action on the property involved are an unconstitutional taking are well established. If the owner affirmatively demonstrates that the legislative or administrative determination deprives him of *all* beneficial use of the property, the action will be held unconstitutional. But the restrictions imposed must be such that the property cannot be used for *any* reasonable purpose. It is not enough for the property owners to show that the zoning action results in substantial loss or hardship." (emphasis in original) (citations omitted).

*Accord, Rockville v. Stone, supra,* 271 Md. at 663-64; *Montgomery Co. Council v. Kacur,* 253 Md. 220, 229, 252 A. 2d 832 (1969). Suitability and feasibility, therefore, are not the criteria for establishing confiscation in the constitutional sense.

The evidence here falls far short of showing a violation of Maryland National's constitutional rights.

*Judgment reversed; appellee to pay costs.*