## JOHN J. FITZGERALD *v.* MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 787, September Term, 1976.]

*Decided September 7, 1977.*

The cause was argued before MOYLAN, MELVIN and MASON, JJ.

*John J. Delaney,* with whom were *Linowes & Blocher* on the brief, for appellant.

*Martin J. Hutt, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney for Montgomery County,* and *Sue Levin, Assistant County Attorney,* on the brief, for appellees.

MASON, J., delivered the opinion of the Court.

Appellant, John J. Fitzgerald, is the owner of two contiguous tracts of land consisting of approximately twenty-two acres located on the south side of Democracy Boulevard (a six lane dual highway) opposite the Montgomery Mall Regional Shopping Center. Within the neighborhood of the subject property, the zoning pattern and land use is single family residential in accord with the R-R Zone, Rural Residential. Appellant requested reclassification of this property from R-R Zone (now designated as R-200, single family half acre) to C-3 Zone (Highway Commercial) or, in the alternative, R-T Zone (Town House). The Montgomery County Council, sitting as a District Council, denied both applications and the lower court affirmed this decision. Appellant only appeals, however, from the denial of the R-T Zone applications. He contends:

I. That the record is devoid of any legally sufficient evidence which would render the District Council's denial of the applications for the R-T Zone fairly debatable.

II. That the District Council failed to comply with the statutory requirement of supplying reasons for its conclusions to deny the applications for the R-T Zone.

I.

The R-T Zone has been held to be a "floating zone." *Knudsen v. Montgomery County Council,* 241 Md. 436, 217 A. 2d 97 (1966). Accordingly, the Maryland "change or mistake" rule is inapplicable. Such a zone is in the nature of a special exception and the requested reclassification must not only satisfy the express purpose clause of the R-T Zone, but must also result in development compatible with the uses in the surrounding neighborhood. *Bigenho v.*

*Montgomery County Council,* 248 Md. 386, 237 A. 2d 53 (1968).

The purpose clause of the R-T Zone, as embodied in Section 59.44 of the Montgomery County Zoning Ordinances, provides in relevant part:

The purpose of the R-T Zone is to provide suitable sites for town houses:

(1) In sections of the county that are designated or appropriated for multiple-family residential development at densities of 12.5 units or more per acre; or

(2) In locations of the county where there is a need for buffer or transitional uses between commercial, industrial, or high density apartment uses and low density single-family uses.

. . . The fact that an application for R-T Zoning complies with all specific requirements and purposes set forth herein shall not be deemed to create a presumption that the resulting development would be compatible with surrounding land uses and, in itself shall not be sufficient to require the granting of the application.

Although finding that appellant's applications technically satisfied the purpose clause of the R-T Zone, the District Council in its resolution and opinion, denied the applications for the following reasons:

(1) The proposed R-T development would not provide a suitable buffer between the commercial development to the north and the low density single-family uses immediately adjacent to the subject property.

(2) The proposed R-T development would not be compatible with the principles and objectives of the Master Plan for the Cabin John Watershed.

(3) The proposed R-T Zoning would permit a much higher density of development than provided for

this tract and area in the Master Plan for the Cabin John Watershed.

(4) The proposed R-T development would not be compatible with the use of adjacent properties in the neighborhood.

(5) The proposed R-T development would have detrimental effects on the use of adjacent properties in the neighborhood.

It is evident that the question of density was the principal issue considered by the District Council in determining that the applications for R-T Zoning were incompatible with the surrounding neighborhood. The evidence before the District Council on this issue included, among other things, the report of the Professional Planning Staff of the Montgomery County Planning Board, the report of the Montgomery County Planning Board, and the report of the hearing examiner.

The Professional Planning Staff, which recommended the R-T Zone, stated:

There has been no deviation from the R-R Zoning classification throughout the entire neighborhood. In fact, the entire Cabin John Watershed Master Plan Area has historically been scrupulously adhered to.

. . .

[R]esidential townhouse uses on this site would help to uphold the integrity of the Cabin John Master Plan by retaining only residential uses south of Democracy Boulevard. Granted that the 12.[5] dwelling units permitted in the R-T Zone per acre is significantly more intensive than the 2.0 dwelling units per acre allowed in the R-R Zone utilizing the cluster method of subdivision; however, the staff believes that this site could well

be developed with cluster of townhouses providing the stabilization sought for the area.

. . .

22 acres of R-T Zoning would generate approximately 272 dwelling units.

The Montgomery County Planning Board, which recommended disapproval of the R-T Zone, suggested:

[T]hat the applicant be permitted to withdraw without prejudice in order to refile under another zoning category with less density than R-T, such as R-60, R-90 or P.D., Planned Development. . . . [T]he density permitted in the R-T Zone is higher than would be consistent with the objectives of the Master Plan, and that the Planning in the R-T Zone is higher than would be consistent with the objectives of the Master Plan, and that the Planning Board should continue to take a strict view toward the implementation of the Cabin John Master Plan. . . . [T]hat 275 dwelling units would be too dense a development for this tract but that 175 to 200 units would be more feasible.

The hearing examiner, who recommended approval of the R-T Zone, stated in relevant part:

The total yield from this project will probably be closer to 200 units suggested by the applicant than the unrefined arithmetical computation of 275 dwelling units suggested by the Planning Board.

. . .

The R-T Zone would provide a form of development compatible with existing and planned land uses in the surrounding residential area.

Although the requested reclassification to the R-T Zone is not in strict accord and harmony with the land use designation for this property in the Cabin John Master Plan, it is not antithetical to the

planning principles and ideals contained in that Master Plan to retain the area south of Democracy Boulevard within this planning neighborhood for residential purposes and provide stability to the area.

Reclassification to the R-T Zone would not seriously impact public facilities in the area and would be in the public interest.

The neighborhood opposition to the R-T Zone was based on the following:

[T]hat the density permitted in the zone was too great a difference between the adjoining density of development under the R-R Zone. . . . [F]our dwelling units to the acre, producing 90 to 100 units as might be produced in the R-90 or R-60 Zone [would be agreeable]. . . . [T]here is insufficient open space under such zone and consequently development on the property would not be spacially compatible.

The evidence before the District Council, set forth above, indicates to us that the denial of the zoning reclassification was fairly debatable. It is fundamental that court review of actions taken by the zoning authority is narrow and restricted in scope. Where the zoning authority has declined to rezone, the inquiry of the court is whether there was legally sufficient evidence to support the decision of the zoning body, i.e., was it fairly debatable. *Montgomery County Council v. Shiental*, 249 Md. 194, 238 A. 2d 912 (1968). Rezoning is a legislative function and it is not for the court to zone or rezone if the legislative finding is based on substantial evidence. *Board of County Commissioners v. Turf Valley*, 247 Md. 556, 233 A. 2d 753 (1967).

Appellant argues that town house density is an insufficient basis for the denial of the requested rezoning unless it translates into some tangible adverse impact upon public facilities in the community, such as roads, schools and utilities. We do not agree. It is well established that

zoning to regulate density is a legitimate exercise of the police power in furtherance of the public health, safety and welfare. *See Malmar Associates v. Board of County Commissioners*, 260 Md. 292, 272 A. 2d 6 (1971). Clearly, the character of a neighborhood and the quality and lifestyle conceived for it is determined by the density of the development. In *Berman v. Parker*, 348 U. S. 26 (1954), it was argued that taking property for ridding an area of slums was permissible, but taking it merely to develop a better balanced, more attractive community was not. The Supreme Court, in refusing to limit the concept of public welfare, stated:

> We do not sit to determine whether a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive. . . . the values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. *Id.* at 32-33.

In *Village of Belle Terre v. Boraas*, 416 U. S. 1 (1974), the Supreme Court in upholding an ordinance restricting land use to one-family dwellings stated:

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within *Berman v. Parker supra.* The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones, where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. *Id.* at 9.

This language clearly suggests that density is a valid consideration in land use development projects. In *Queen Anne's County v. Miles*, 246 Md. 355, 228 A. 2d 450 (1967),

the Court of Appeals held that where alternative zoning categories provide for a variety of housing required in the county, density restrictions in some areas are rationally related to the public welfare. In that case the Court upheld the establishment of a zone with a five acre minimum lot size. Obviously, the purpose in prescribing a minimum lot size was to control the density of the development. In *Smith Bros. v. Montgomery County Council*, 246 Md. 1, 4, 227 A. 2d 1 (1967), the Court held, among others things, that a "rezoning of ten acres for town houses with a density three times as great as permitted by the existing zoning would not be compatible with the present character of the neighborhood." Similarly, an increase in density to nearly six times as great as the present zoning permits would be incompatible with the character of the neighborhood in this case.

Whether density, without more, is a sufficient basis to deny a request for rezoning depends upon the facts and circumstances of each case. In *Kanfer v. Montgomery County Council*, 35 Md. App. 715, 733, 373 A. 2d 5, 14 (1977), this Court said:

> [D]ensity *per se* would not be a valid reason for the denial of the application, unless the District Council could reasonably have found that increased density caused adverse impact upon public facilities such as roads, schools and utilities.

There, the overwhelming evidence showed that the densities permissible under the R-T Zone were entirely compatible and appropriate in terms of existing and planned densities within the neighborhood. It is obvious the facts and circumstances in *Kanfer* are markedly different from the instant case. Here, the requested zoning would have resulted in a substantial increase in the density of a neighborhood where the Master Plan had been scrupulously adhered to and where there had been no deviation from the low density, single family, R-R classification. Moreover, there is no issue of exclusionary zoning or confiscation of property. The evidence shows that the subject property can be developed under two

other single family, residential categories more compatible with the character of the neighborhood and with less density than the R-T Zone.

Therefore, we conclude that the lower court, under the facts and circumstances of this case, was correct in holding that incompatibility based on density consideration alone was a legally sufficient reason for denial of the applications.

## II.

The contention of appellant that the District Council failed to comply with the statutory requirement of supplying reasons for its conclusions is without force. In *Messenger v. Board of County Commissioners*, 259 Md. 693, 706, 271 A. 2d 166 (1970), the court held:

> In a case involving a denial by the District Council of the requested rezoning, it is only necessary for the District Council to find that the applicant had failed to meet his burden of proof on any of the elements necessary to justify the requested rezoning . . .

In this case appellant, in order to justify the requested rezoning, had the burden of proving that it not only complied with the purpose clause of the zoning ordinance, but that it also was compatible with the existing and planned uses in the surrounding neighborhood. Here, the District Council, based on the evidence, specifically found that the density permitted in the proposed R-T Zone was incompatible with the adjacent properties in the neighborhood and in conflict with the Master Plan.

Because we have already determined that density, even if it does not impact on public facilities, is a sufficient basis to deny a requested zoning reclassification, we conclude that the District Council made sufficient findings of basic facts to comply with the ordinance and to support its denial of the reclassification.

*Order affirmed.*
*Costs to be paid by appellant.*