## STERLING TENNISON ET AL. *v.* LOUIS E. SHOMETTE ET AL.

[No. 88, September Term, 1977.]

*Decided November 9, 1977.*

The cause was argued before MORTON, THOMPSON and LISS, JJ.

2

*Walter B. Dorsey* for appellants.

*James A. Kenney, III*, with whom were *Briscoe, Kenney & Kaminetz* on the brief, for appellees Shomette and Stanhagen. *Joseph E. Bell, II, County Attorney for St. Mary's County,* for other appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we are presented with two issues: (1) whether there was sufficient evidence of mistake to rezone certain property, and (2) whether the rezoning of that property constituted illegal spot zoning.

The appellants, Sterling Tennison and a number of other land owners, appeal from an order of the Circuit Court for St. Mary's County signed by Judge Joseph A. Mattingly, approving a zoning change made by the County Commissioners of St. Mary's County on a tract of land owned by the appellees, Louis E. Shomette and William H. Stanhagen. The land in question, which was acquired by the appellees in 1973, consists of approximately 9.873 acres and is located along the southbound lane of Md. Route 235 on the approach to Lexington Park, Maryland. At the time the property was acquired there was no comprehensive plan for St. Mary's County and the property was zoned residential. The appellees submitted an application to the Planning Commission in August of 1973 requesting that the property be rezoned commercial so that they could erect a Holiday Inn. On September 24, 1973, the Planning Commission recommended that the property be rezoned as requested and the recommendation was approved by the County Commissioners on November 6, 1973. Relying upon the zoning change, the appellees expended substantial sums of money in acquiring site plans, building plans, loan commitments, and other items related to the construction of the motel. In 1974, St. Mary's County prepared and adopted a comprehensive zoning ordinance for the entire county.[1]

---

1. Prior to the adoption of the Comprehensive Plan, only the eighth district was subject to zoning regulations.

Under this ordinance the property was zoned C-1 which would preclude the erection of a motel.

As soon as the appellees learned of the zoning classification of the property, they applied for a reclassification from C-1 to C-2, a category that would permit the erection of a motel. The basis for this requested change was that the property had been mistakenly designated C-1 in the Comprehensive Plan. The application was referred to the Planning and Zoning Commission and Technical Evaluation Commission for review and after they approved the request, a hearing was held before the County Commissioners.[2]

At the hearing, Robert C. Willard, the Director of Planning for St. Mary's County at the time the ordinance was enacted, explained why the property was not zoned C-2. According to Mr. Willard, the Planning Commission in developing the Comprehensive Plan had established a policy of incorporating into the plan zoning changes that had been recently approved. When the recommendations for the property in question were made by the Planning Commission, they neglected to note that a motel was not permitted in a C-1 category and zoned the entire area C-1. The members of the Board of County Commissioners at the time also stated that it was their intent to zone the property to accommodate the construction of a Holiday Inn and the C-1 classification was a mistake. More specifically, they stated:

> "At that time, we had found that changes in the neighborhood since the original zoning supported the application and that the rezoning was compatible with the new Master Plan and the proposed Zoning Ordinance. For these reasons, we believed the property was zoned as of the adoption of the new ordinance and maps to accommodate the construction of a Holiday Inn."

---

2. The Board of County Commissioners had previously approved the requested change on Jan. 30, 1975, but on appeal the case was remanded for failure to make findings of fact as required by § 17.5 B of the St. Mary's County Zoning Ordinance and Md. Code, Art. 66B, § 4.05 (a).

There was also evidence that the Commissioners had publicly stated they did not intend to have the Comprehensive Plan change recent zoning decisions.

James Parker, a planning expert, testified that the C-1 classification was inconsistent with the overall scheme of the Comprehensive Plan. According to the zoning ordinance, property placed in the C-1 category "is primarily intended to provide convenience shopping for persons residing in adjacent residential areas and to satisfy those basic shopping needs which occur daily or frequently and so require commercial facilities in close proximity to residences." There are no proposed or existing residential areas adjacent to the property and the nearest neighborhood is on the other side of Route 235. Access to the land from this neighborhood would require the crossing of a dual-lane highway and would present traffic problems. Under these circumstances, Mr. Parker thought that the highway acted as a barrier and prevented the land in question from being used to serve the needs of the local residents. A more reasonable approach, according to Mr. Parker, would be to establish a C-1 district immediately adjacent to the residential neighborhood.[3] In addition to Mr. Parker's testimony, the Planning Commission and the Office of Land Use and Development stated that the proper use of the property was not compatible with its existing zoning classification.

In contrast to the unsuitability of the land as a C-1 use, Mr. Parker testified that the land was ideally suited for the construction of a motel. Under the zoning ordinance, C-2 districts are "intended for commercial activities and establishments which are not primarily related to residential developments and which require accessibility from major highways in the county." The appellees' property is situated near the probable intersection of Route 235 and the access road to the bridge across the Patuxent River that is presently under construction. The property is bordered on one side by a fire department and Elks Club, which Mr.

---

3. There is a C-1 district immediately adjacent to the neighborhood referred to by Mr. Parker.

Parker thought acted as a buffer between the property and existing residential uses further to the south. There is also an old railroad bed, now converted to a utility right of way to the rear of the property which would act as a barrier to any adjoining uses that might develop.

The County Commissioners considered this evidence and approved the request on June 3, 1976. On appeal to the Circuit Court for St. Mary's County the rezoning of the appellees' property was upheld on the basis that there had been a mistake in the Comprehensive Plan.

## I Rezoning Based on Mistake in Comprehensive Plan

The appellants contend that the evidence before the County Commissioners was insufficient to support a finding of mistake. In determining whether a mistake has been made, a number of general principles have been established. There is a strong presumption that the original comprehensive zoning plan was correct and in order to sustain a piecemeal change there must be strong evidence of mistake. *Pattey v. Board of County Commissioners*, 271 Md. 352, 317 A. 2d 142 (1974); *Stratakis v. Beauchamp*, 268 Md. 643, 304 A. 2d 244 (1973). In considering whether this presumption has been overcome a more liberal standard is applied when the property is being reclassified from one commercial subcategory to another than is applied when the reclassification involves a change from one use category to another. *Chapman v. Montgomery County Council*, 259 Md. 641, 271 A. 2d 156 (1970); *Missouri Realty, Inc. v. Ramer*, 216 Md. 442, 140 A. 2d 655 (1958). *See also* Note, *Zoning Change: Flexibility v. Stability*, 26 Md. L. Rev. 48 at 51 (1966). Once evidence strong enough to render the issue of rezoning fairly debatable is produced, the change in zoning will be upheld since it is not the function of the courts to substitute their judgment for that of the zoning authority. *Mayor of Rockville v. Henley*, 268 Md. 469, 302 A. 2d 45 (1973); *Mack v. Crandell*, 244 Md. 193, 223 A. 2d 248 (1966); *Hyson v. Montgomery County Council*, 242 Md. 55, 217 A. 2d 578 (1966); *Anne Arundel County v. Maryland National Bank*, 32 Md. App. 437, 361 A. 2d 134 (1976). Applying these principles

to the instant case, we think the evidence was sufficient to render the issue of mistake fairly debatable.

In addition, the evidence shows the original Commissioners and the planning officials overlooked the recent approval of the zoning change when they enacted the comprehensive zoning ordinance. The appellants, citing *Pattey v. Board of County Commissioners, supra,* and *Miller v. Abrahams,* 239 Md. 263, 211 A. 2d 309 (1965), argue these administrative mistakes are insufficient to justify the change in zoning. Both of these cases are distinguishable and do not support the appellants' argument. In *Pattey* the planners mistakenly recommended that the property be placed in agricultural and conservation districts. The Court of Appeals struck down a change in the Comprehensive Plan stating that in order to justify the change, the mistake must be that of the legislative body, not of the planners. Unlike *Pattey,* in the instant case, there was evidence supporting the finding that both were in error. In *Miller v. Abrahams,* the council in passing the zoning resolution stated that it was adopting the Planning Board's recommendation for R-6 zoning when in fact the Planning Board had recommended B-L zoning. This fact was insufficient in this case because there was evidence that despite this error the council considered R-6 zoning to be proper. In the case before us, the evidence showed that the County Commissioners intended to zone the property C-2 but zoned the property C-1 instead. This alone would support the decision below.

The appellants also argue that even if there were a mistake, under the St. Mary's County Zoning Ordinance, § 17.5 B, in order for a zoning change to be justified the mistake must be inconsistent with the adopted plan.[4] In response to this argument, the appellees maintain the required finding of inconsistency is improper under *Md.*

---

4. 17.5 B. "Change can only be allowed (1) where the findings of fact justify the need for the change, and where the proposed change is compatible with the master plan and will not adversely affect the ability of the county to provide the services identified in the master plan and attendant plans; or (2) upon finding there was a mistake or error in the original zoning classification which was inconsistent with the adopted plan."

*Code*, Art. 66B, § 4.05 (a).[5] We need not decide this issue because irrespective of the propriety of the St. Mary's County Zoning Ordinance there was ample evidence to show the C-1 classification was inconsistent with the Comprehensive Plan. The testimony shows that the Planning Commission, Office of Land Use and Development, and a planning expert thought the present classification was not compatible with the purpose of the C-1 classification enunciated in the Comprehensive Plan. This evidence not only showed the requisite inconsistency required by the ordinance but was in itself sufficient to render the issue of mistake fairly debatable.

The appellants, citing *Miller v. Abrahams, supra,* maintain the recommendation of the Planning Commission and the testimony of the expert did not furnish strong evidence showing the present classification was inconsistent with the adopted plan. Normally the recommendation of the Planning Commission that the change be granted is sufficient to render the issue fairly debatable. *See Montgomery v. Board of County Commissioners,* 263 Md. 1, 280 A. 2d 901 (1971); *Messenger v. Board of County Commissioners,* 259 Md. 693, 271 A. 2d 166 (1970); *Stephens v. Montgomery County,* 248 Md. 256, 235 A. 2d 701 (1967). In this case the Planning Commission merely stated the use was incompatible but did not state the facts upon which it was based. As such, this recommendation alone cannot serve

5. Md. Code, Art. 66B, § 4.05 (a) *"Generally; findings for reclassification.* — Such regulations, restrictions, and boundaries may from time to time be amended, supplanted, modified, or repealed. Where the purpose and effect of the proposed amendment is to change the zoning classification, the local legislative body shall make findings of fact in each specific case including, but not limited to, the following matters: population change, availability of public facilities, present and future transportation patterns, compatibility with existing and proposed development for the area, the recommendation of the planning commission, and the relationship of such proposed amendment to the jurisdiction's plan; and may grant the amendment based upon a finding that there was a substantial change in the character of the neighborhood where the property is located or that there was a mistake in the existing zoning classification. A complete record of the hearing and the votes of all members of the local legislative body shall be kept."

The county ordinance in question was amended in 1977 to strike the requirement that the classification assigned due to mistake be inconsistent with the adopted plan in order to grant a change in zoning.

8

as strong evidence of mistake. *See Stratakis v. Beauchamp, supra.*

This deficiency was rectified by the testimony of Mr. Parker. Unlike the expert in *Miller v. Abrahams*, Mr. Parker stated that the property was not suitable for a C-1 classification. This testimony was supported by factual evidence, and thus serves as strong evidence of mistake.

## II  Spot Zoning

The appellants' second contention is that rezoning of a small tract of land C-2 in the midst of a C-1 district amounted to illegal spot zoning. We fail to see any merit in this contention.

Spot zoning occurs when a small area in a district is placed in a different zoning classification than the surrounding property. *Hewitt v. County Commissioners*, 220 Md. 48, 151 A. 2d 144 (1959); *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A. 2d 83 (1957). Spot zoning is not invalid *per se*. Rather, its validity depends on the facts of each individual case. *Spaid v. Board of County Commissioners*, 259 Md. 369, 269 A. 2d 797 (1970). While spot zoning is illegal if it is inconsistent with an established comprehensive plan and is made solely for the benefit of private interests, it is a valid exercise of the police power where the zoning is in harmony with the comprehensive plan and bears a substantial relationship to public health, safety, and general welfare. *Trustees of McDonogh Educational Fund & Institute v. Baltimore County*, 221 Md. 550, 158 A. 2d 637 (1960); *Hewitt v. County Commissioners, supra; Huff v. Board of Zoning Appeals, supra; Cassel v. Mayor of Baltimore*, 195 Md. 348, 73 A. 2d 486 (1950).

In arguing that the rezoning constitutes impermissible spot zoning the appellants have overlooked testimony indicating other properties in the immediate area have been rezoned to C-2. Even if this property were the only C-2 use permitted in the area, it would not amount to invalid spot zoning as the change is for the public good and is consistent with the Comprehensive Plan. The property is presently

located in a commercial district and the proposed use of the property in question is compatible with the other uses permissible in the C-1 district. The mere fact that the use is somewhat different than the uses permitted under the C-1 classification does not render the use inconsistent with the Comprehensive Plan. *Cassel v. Mayor of Baltimore, supra.* As we previously noted the present classification of the land was inconsistent with the purposes enunciated in the Comprehensive Plan. Contrary to appellants' assertion, there was also ample evidence to show the land was rezoned due to a community need for a motel complex of this type and not solely to benefit the appellees.

Finally, the appellants urge that it is impermissible in and of itself to classify a single lot differently from the surrounding district. Once again the appellants have overlooked the fact other lots in the area have been rezoned C-2. There is, however, a more fundamental problem with this argument. In determining whether impermissible spot zoning exists, the size of the land in question is not controlling. The only relevant inquiries are whether the rezoning is inconsistent with the Comprehensive Plan and whether it was done for the public good or private benefit. *See Huff v. Board of Zoning Appeals, supra,* n. 1.

> *Order affirmed.*
> *Appellants to pay the costs.*