675 A.2d 1023

George W. WHITE, Jr. et al.

v.

Rodney V.R. SPRING et al.

No. 1297, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 6, 1996.

694

William D. Berwick (White, Mindel, Clarke & Foard, on the brief), Towson, for appellants.

Warren K. Rich (Douglas G. Moorhead, Rich and Henderson, P.C., Annapolis, and Michael L. Pullen, Easton, on the brief), for appellees.

Argued before MOYLAN, FISCHER and CATHELL, JJ.

CATHELL, Judge.

George W. White Jr. *et alia*, appellants, appeal from a judgment of the Circuit Court for Talbot County (Horne, J., presiding), rendered in favor of Rodney V.R. Spring *et alia*, appellees, affirming the rezoning of certain property owned by appellees. Appellants present one issue on appeal:

Whether the trial court erred in affirming the decision of the County Council of Talbot County, Maryland by erroneously finding that the issue before the County Council had been fairly debatable[.]

Appellants, however, limit our review of that question, when they describe their argument as:

The trial court erred in affirming the decision of the County Council of Talbot County, Maryland, as there was insufficient evidence of a mistake in the 1989 comprehensive critical area rezoning of the Spring property to make the matter fairly debatable.

From our reading of Judge Horne's opinion, it is apparent that the issue and argument presented to him was similarly limited.

Thus, the issue is whether a mistake was made when the property was rezoned in 1989. Appellants do not argue that, even if a mistake did occur in 1989, the most recent rezoning was, nevertheless, improper. We shall discuss that point further, following resolution of the argument appellants do present.

### General Discussion

Absent a regulation so prohibitive as to constitute an unconstitutional confiscation or taking of property, original zoning (including master planning) and comprehensive rezoning are limited only by the general boundaries of the police power and appropriate procedural and due process considerations. A legislative body establishes zoning policy through its adoption of master plans, comprehensive zoning, and comprehensive rezonings. So long as (1) the appropriate procedural criteria are met, (2) the due process limitations have been duly addressed, (3) the policy is designed to achieve a valid public purpose, and (4) the police power is not otherwise exceeded, comprehensive zoning and comprehensive rezoning—i.e., the conclusions of legislative bodies—cannot be a mistake, *except* where it is proven by substantial evidence that the information relied upon by the legislative entity was

wrong, *i.e.*, a mistake. To hold otherwise, as the majority opinion in *People's Counsel v. Beachwood I Ltd. Partnership*, 107 Md.App. 627, 670 A.2d 484 (1995) (Beachwood) opined, would be to permit the administrative agencies and the courts to "second guess" the legislative body by substituting their concepts of the appropriate policy to be adopted. *Id.* at 638, 670 A.2d 484. The creation of zoning policy is a matter reserved for the legislative body of government; it is neither normally an administrative nor a judicial function.

We next note that individual petitions for rezoning (as opposed to comprehensive rezoning),[1] must generally be supported by substantial evidence showing either that a change in the neighborhood has occurred since the last comprehensive rezoning or that, when the prior comprehensive rezoning occurred, the legislative entity relied upon mistaken or erroneous evidence. This principle has come to be termed the change/mistake rule.[2] If a petitioner can establish a zoning mistake, a zoning change is permitted, but, even then, it is not required. In the case at bar, we are concerned only with the mistake prong of the change/mistake rezoning rule. We leave the "change" aspect to another day.

### Zoning Mistake

In *Beachwood,* Judge Moylan, for the majority, described what a zoning mistake is not. Here, we describe what, in

---

1. Even though applications for floating zones are often couched in rezoning language, they are not applications for traditional rezoning. They much closer resemble applications for special exceptions and, in respect to judicial review thereof, are generally held to standards reserved for special exceptions, as contrasted with rezoning standards. Consequently, they are generally considered as having resulted from administrative action and not legislative action, even though a legislative body sometimes reconstitutes itself as the entity that considers floating zone applications.

2. Some home-rule jurisdictions have, by statute, created procedures and practices that, on occasion, bear little resemblance to traditional zoning standards, practices, and procedures. In those jurisdictions, judicial review of their activities often must incorporate a consideration of their respective statutory provisions.

terms of traditional zoning and rezoning, a zoning mistake is. From these two cases, the law of zoning mistake, as applicable to traditional rezoning, may be completely understood.

■ In *Beachwood,* Judge Moylan noted that there had been no allegation that the County Council had relied upon evidence that was erroneous or a mistake; instead, it was alleged that it had relied upon correct factual evidence to arrive at an erroneous or mistaken conclusion. It was also noted that, before the Board of Appeals, Beachwood had alleged that the conclusion reached by the Council was "out of character with the zoning of the surrounding area." 107 Md.App. at 636, 670 A.2d 484. Judge Moylan further stated that the Board's majority opinion had proffered that the County's conclusions as to rezoning resulted in a classification that "was erroneously zoned by the County Council." *Id.* at 635, 670 A.2d 484. Citing and quoting from *Boyce v. Sembly,* 25 Md.App. 43, 50–51, 334 A.2d 137 (1975), we stated that

> error or mistake is established when there is probative evidence to show that the . . . premises relied upon by the Council . . . were invalid. Error can be established by showing that . . . the Council failed to take into account then existing facts . . . so that the Council's action was premised . . . on a misapprehension.

*Beachwood,* 107 Md.App. at 645, 670 A.2d 484 (emphasis omitted). Judge Moylan then elucidated the operative concern, in respect to the consideration of a zoning mistake:

> The finding of a mistake or error is not so much concerned with the logical validity or merit of ultimate conclusion-drawing as it is with the adequacy and accuracy of the factual premises that underlie the conclusion-drawing. A conclusion based on a factual predicate that is incomplete or inaccurate may be deemed, in zoning law, a mistake or error; an allegedly aberrant conclusion based on full and accurate information, by contrast, is simply a case of bad judgment, which is immunized from second-guessing.

*Id.* Upon reflection, this simplified statement accurately and fully states the law, the concurrence in *Beachwood* notwith-

standing. The standard encompassed within the statement serves to guide a review of traditional zoning mistake issues fully, presuming, of course, that proper procedure is followed and there are no police power or taking issues present.

Before we apply that concept to the case sub judice, we note the general standard when reviewing the decisions of administrative agencies, including zoning entities.

### Standard of Review

The Court of Appeals, in a case involving a denial of a use permit, stated, "It is a clearly established rule in the law of zoning that a court may not substitute its judgment for that of the Zoning Board." *Dorsey Enters., Inc. v. Shpak,* 219 Md. 16, 23, 147 A.2d 853 (1959); see also *Largo Civic Ass'n v. Prince George's County,* 21 Md.App. 76, 88, 318 A.2d 834 (1974). We, in discussing the law relative to rezoning, have stated that the courts may not substitute their judgment for that of the legislative agency, if the issue is rendered fairly debatable. *Anne Arundel County v. Maryland Nat'l Bank,* 32 Md.App. 437, 440, 361 A.2d 134 (1976); *see Tennison v. Shomette,* 38 Md.App. 1, 5, 379 A.2d 187 (1977), *cert. denied,* 282 Md. 739 (1978); *Fitzgerald v. Montgomery County,* 37 Md.App. 148, 153, 376 A.2d 1125 ("It is fundamental that court review of actions taken by the zoning authority is narrow and restricted in scope."), cert. denied, 281 Md. 737 (1977), and *cert. denied,* 439 U.S. 854, 99 S.Ct. 164, 58 L.Ed.2d 160 (1978). The basic reason for the fairly debatable standard is that zoning matters are, first of all, legislative functions and, absent arbitrary and capricious actions, are presumptively correct, if based upon substantial evidence, even if substantial evidence to the contrary exists. The zoning agency, in this case, not the court, is considered to be the expert in the assessment of the evidence. *Prince George's County v. Meininger,* 264 Md. 148, 154, 285 A.2d 649 (1972); *Brouillett v. Eudowood Shopping Plaza, Inc.,* 249 Md. 606, 608, 241 A.2d 404 (1968); *B.P. Oil, Inc. v. County Bd. of Appeals,* 42 Md.App. 576, 577, 401 A.2d 1054 (1979); *see Maryland Nat'l Bank,* 32 Md.App. at 440, 361 A.2d 134 ("[W]hen there is

sufficient evidence before the rezoning body to render the issue fairly debatable, the courts may not substitute their judgment for that of the legislative agency."); *see also Hardesty v. Dunphy,* 259 Md. 718, 725, 271 A.2d 152 (1970) (holding that, when a mistake has been found, that finding "merely *permits* the legislative body to grant the requested rezoning but does not *require* it to do so"); *Dill v. Jobar Corp.,* 242 Md. 16, 22, 217 A.2d 564 (1966) (holding that, even if a mistake is proven, a rezoning is even then only compelled (as opposed to permitted) if existing zoning is confiscatory, *i.e.,* if an unconstitutional taking results).

### The Instant Case

Unlike *Beachwood,* where an administrative agency, the Board, rezoned the subject property, in the case *sub judice,* the property was rezoned by the County Council of Talbot County, the same body that had originally reclassified the property in 1989 as a part of comprehensive rezoning, relying upon the evidence that had been presented to it at that time. Moreover, as we shall indicate, there was, in this most recent rezoning (the subject of the instant appeal), substantial evidence before the rezoning entity, the Council, that the information furnished to it during the prior comprehensive rezoning had been erroneous and that, because of that material mistake, the Council had, at that prior time, operated under a misapprehension as to the factual predicate underlying that prior rezoning.

In the case *sub judice,* the subject property, prior to the 1989 comprehensive rezoning, had been designated in both the Town of Oxford Comprehensive Plan and the Talbot County Comprehensive Land Use Plan as a development area. The property is adjacent to the Town of Oxford in an area of potential annexation, which has been discussed in the town's plan. Since 1974, the property had been zoned A–1, which permitted a density of one unit per acre in areas not served by public sewerage. In 1984, however, the Chesapeake Bay Critical Area legislation began to have an impact upon local land-planning decisions. At that time, the property was first

designated as being within the 1,000 feet "critical area" under the Chesapeake Bay Critical Area Protection Program. Under that program, the County was required to designate the land within that area as either an Intensely Developed Area (IDA), Limited Development Area (LDA), or Resource Conservation Area (RCA), and get approval of such designations from the Chesapeake Bay Critical Area Commission. Under the critical area provisions, a density of up to four units per acre was permitted in an LDA area, while a density of no more than one unit per five acres was permitted in an RCA area.[3] The subject property was, at that time, apparently, designated as an LDA area.

The County, around the same time, in order to coordinate its zoning district classifications with the critical area requirements, established seven zoning districts, to conform generally to the critical "areas" we have described.[4] Two of these zoning districts, RC (Rural Conservation) and RR (Rural Residential), were designed to be included in the RCA and permitted one unit per twenty acres and one unit per five acres, respectively. Under the LDA designation, the County created two zoning districts, the VC (Village Center) district and the TR (Town Residential) district. In both of these districts, one unit per acre was permitted without public sewer service availability and four units per acre were permitted if public sewer service was available. The provisions for both of these districts were comparable to medium density zoning in the County's previous A–1 classification of the property.

The comprehensive rezoning that took place in 1989 was designed to address, at least in part, the establishment of the critical area districts. The area in which the subject property is situated was rezoned, taking into account the various zoning districts that had to be established as a result of the critical area program's requirements as mandated by the State, and

---

**3.** The Intensely Developed Area (IDA) is not at issue in the present case.

**4.** The interplay between the critical area classifications and local zoning classifications is, at times, a complex interaction.

also considering, during the process, the implications of the growth allocation "provisions of the critical area program," a concept that allows growth to be allocated up to certain designated percentages.[5]  During those proceedings, the Talbot County Planning Department made an erroneous assumption, *i.e.,* that the development densities permitted under the VC district and the TR district were prohibited by the critical area program as it applied to areas not annexed by the Town of Oxford.  This mistake was caused by the Planning Department's erroneous belief that the land was either within the critical area RCA, which limited development to a maximum density of no more than one unit per five acres, or within the critical area LDA and development could not occur without a growth allocation.  The property at issue, however, was not in the RCA and there were, at the time, no requirements as to growth allocation in LDAs.

Because the Planning Department erroneously believed that the subject property was classified for critical area limitations as an RCA—limited to one unit per five acres—or an LDA—which was believed to require a growth allocation [6]—the Department advised the County Council that a critical area growth allocation would have to be used to permit a density higher than one unit per five acres for the subject property.  At that time, however, no procedure for such an allocation, in respect to LDAs, had been devised.  Accordingly, in 1989, the County Council rezoned the property to a RR (Rural Residential) zoning district, *i.e.,* no more than one unit per five acres based upon the Department's recommendation, which was

---

**5.** For the purposes of this opinion, we do not need to explain the concept of growth allocation further, except to note that it may be one of the escape valves that might insulate the Critical Area Program from the adverse implications in respect to takings discussed in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

**6.** It is not completely clear from the record before us under which critical area classification the subject property was zoned.  As the reason for the zoning reclassification was based upon either of two mistaken assumptions, one of which applied in each instance, we need not resolve that matter.

based upon its mistaken interpretation of the data available to it.

The general provisions of the comprehensive plans [7] of the town and the County contemplated that the area containing the subject property be utilized for medium density of up to four units per acre. The evidence also indicated that adequate public water, sewer, and road access were available to the subject property.

After the 1989 comprehensive rezoning, the Planning Department discovered that the subject site was not, and had never been, in the critical area RCA, but was in the critical area LDA. It also realized that it had been mistaken in assuming and recommending to the Council that growth allocation would be required for the subject property in order to include it in a TR district. After the mistake was discovered, appellees filed a petition for rezoning in which the mistakes we have discussed above were raised, along with other issues. Rezoning to a TR district was requested. The petition was referred to the Planning Department for review. The Department then reported to the Planning Commission that it had been erroneously believed that the subject property, prior to the 1989 rezoning, was required to be given a growth allocation in order to have then been zoned TR. The records of the Planning Department supported the staff's report in respect to the mistake that was a part of the staff's adverse recommendation at the time of the 1989 rezoning.[8] The recommendation also included the staff's recommendations for the appropriate zoning district for the subject property.

---

7. Apparently, the County Council and the Town Council were coordinating their efforts at critical area compliance and comprehensive rezoning, addressing critical area issues simultaneously, because of the annexation potential of the subject property and other properties.

8. The mistake in regard to the necessity for growth allocation had apparently been generally addressed as well by the County's amendment of the zoning code text to permit the application for zoning changes of properties under the critical area LDAs. *See* Talbot County Council, Bill No. 487 (1992).

The County Council of Talbot County made several findings of fact.  Included among them was its adoption of the Staff Report of the Planning Office.  That report, in relevant part, states:

> Property was originally zoned A–1 in 1974.  The zoning has changed to RR as a result of the Critical Areas Comprehensive rezoning in August of 1989. . . .
>
> . . . .
>
> Staff finds that this property was given an LDA Critical Area classification in 1989 with the designation as future development area for the Town of Oxford.  *At that time the assumption was that* Growth Allocation acreage would be required to intensify the zoning upon annexation to the Town of Oxford.  *Later* it was found that the LDA category included three zoning classifications, Rural Residential (RR), Village Center (VC) and Town Residential (TR).  The Town [R]esidential (TR) zoning is used as a transition zone in the development areas surrounding incorporated towns.  This was not done for this property adjacent to the Oxford Town boundary.  Staff finds that a mistake was made in the 1989 Critical Area Comprehensive zoning.  The property should have received Town Residential Zoning.
>
> Prior to the 1989 Critical Area Comprehensive rezoning the property was zoned A–1 which allowed for a density of one dwelling unit per acre with septic tanks, the same density as the TR zone.
>
> Staff recommends in favor of the rezoning from Rural Residential (RR) to Town Residential (TR).  [Emphasis added.]

That staff report was further buttressed by other documentation that was part of the evidence before the Council and the trial court that shed additional light upon the nature of the prior mistake.  One of those documents is the letter from the Planning Officer to the County Council explaining the need for a text amendment that we have noted was also necessary after the mistake was discovered.  In pertinent part, the memorandum informed the Council:

It has come to my attention that we do not have a procedure for map amendments (zoning changes) within an LDA (Limited Development Area) in Critical Areas. The assumption we worked under when drafting the updated Ordinance, [the 1989 comprehensive rezoning] was that no map amendments would occur in the Critical Area without growth allocation. We have found this to be untrue.

Applicants may apply for zone changes under the LDA classification since we have three residential zones under this category. An example would be a change from RR to ... TR

. . . .

Memorandum from Dan Cowee, Talbot County Planning Officer, to Talbot County Council 1 (July 14, 1992).

Another document that is consistent with the staff having been originally mistaken when it believed that applicant's property had to be zoned RR (Rural Residential) in 1989 was the Chesapeake Bay Critical Area Commission's concurrence with the zoning text amendment addressing that mistake as explained in a letter from its chairman:

[T]he ... Commission ... concurred with my determination that the proposed change ... qualifies as a refinement to the County's Critical Area Program. This refinement will allow changes to be made in the underlying zones within the LDA that do not affect the parcel's Critical Area status.

Letter from John C. North II, Chairman, Chesapeake Bay Critical Area Comm'n to Dan Cowee, Talbot County Planning Officer 1 (Oct. 16, 1992).

Additionally, at the hearing before the County Council, the Planning Officer testified about the Department's recommendations. Included in that testimony was the Department's position in regard to the mistake the petitioner had alleged had been made in the prior rezoning. As relevant here, that testimony provided in part:

[T]he property was originally zoned A–1 in 1974 ... up to our ... Critical Area Ordinance which was adopted in August of 1989. A–1 allows for one-acre lots....

. . . .

. . . [A]pplicant is requesting a change . . . to Town Residential . . . a medium-density residential district. . . . [S]taff finds that this property was given an LDA . . . classification in 1989 with the designation as future development area for the Town of Oxford. . . . *At that time, the assumption was that growth allocation acreage would be required* to intensify the zoning upon annexation to the Town of Oxford. Later, it was found that the LDA category included three zoning classifications, [including] Rural Residential, . . . [and] TR . . . Town Residential. . . . [T]he Town Residential zoning is used as a transition zone. . . . This was not done for this property. . . . [S]*taff finds that a mistake* was made in the '89 Critical Area comprehensive zoning. The property should have received Town Residential zoning. [Emphasis added.]

In reviewing the rezoning, Judge Horne recognized that there was substantial evidence before the County Council tending to show that the Council had based its previous rezoning upon the mistaken assumption that that zoning was necessitated by reason of critical area growth allocation requirements and that the Council had based that previous rezoning, in substantial part, upon the mistaken information furnished it by its staff—a mistake later discovered by the same staff. Judge Horne stated:

The Court finds Mr. [Cowee]'s testimony and the finding of facts and recommendation of the Planning and Zoning Commission to be persuasive. Mr. [Cowee] [the Planning Officer] testified that the subject land would have been zoned TR in 1989 [the last comprehensive rezoning] except for the fact that the Planning and Zoning Office felt that this land was within the Resource Conservation Area (RCA) and could not be designated TR without a growth allocation. It was subsequently ascertained that the Limited Development Area designation does authorize a TR classification without growth allocation. Thus, the County sought to do what it would have done in 1989 had it been aware it had the power to do so. . . .

... [T]he subject property was designated as a future development area.... [A]ll other future development area land adjacent to Towns in Talbot County were designated TR when the Comprehensive Zoning Plan was adopted in 1989.

... [T]he County Council's finding of mistake in the 1989 Comprehensive Rezoning was supported by substantial evidence and was, therefore, fairly debatable.

■ We have reviewed the evidence that was accepted by the County Council of Talbot County, supporting appellees' position that the Council had made a mistake in the 1989 Comprehensive Rezoning *because it relied upon mistaken and erroneous assumptions proffered to it by its staff.* We note what we stated in *Beachwood:*

The finding of a mistake or error is ... concerned ... with the adequacy and accuracy of the factual premises that underlie the conclusion-drawing. A conclusion based on a factual predicate that is incomplete or inaccurate may be deemed, in zoning law, a mistake or error....

107 Md.App. at 645, 670 A.2d 484. There was ample evidence before all entities involved in the current rezoning process, i.e., the Commission, the Council, and Judge Horne, that one of the primary reasons that the subject property had been previously zoned RR was the misapprehension that it was required to be so zoned because of growth allocation complications. That requirement was later determined not to be applicable. That erroneous belief was the quintessential zoning mistake that permits a mistake-based rezoning.

We hold that Judge Horne's affirmance of the County Council's action, in finding a mistake in its previous zoning action, was appropriate in that, as Judge Horne correctly found, it was supported by substantial evidence. That said, the Council's rezoning was "permitted." We add, however, that the rezoning was not mandatory. We explain further.

■ We said, in affirming a finding of mistake in *Anne Arundel County v. A–PAC Ltd.,* 67 Md.App. 122, 127–28, 506 A.2d 671 (1986):

[T]he Council [in the previous rezoning] mistakenly assumed the completion of the road project and based its comprehensive zoning amendment thereon. As the presumption of validity ... was overcome by ... evidence that the Council's assumption was erroneous, we hold that the trial judge properly reversed the Board's action in denying the rezoning petition.

In *A–PAC*, however, the trial court, after reversing the agency's decision concerning the existence of the prior mistake, remanded the matter to the Board and directed it to grant the rezoning. We did not concur with that portion of the trial court's judgment. *Id.* at 130, 506 A.2d 671. We noted that the County had argued that, even if a mistake had been found, such a finding only permitted a rezoning—it did not mandate a rezoning. We first qualified the County's position by noting that, if the existing zoning unconstitutionally deprived the owner of property, a rezoning otherwise permitted under the mistake rule might be required. We went on to hold, however, that, in our view, the record in *A–PAC* did not establish a regulatory taking and that the case should have been remanded for further consideration of whether to grant that rezoning. *Id.* In other words, the finding of mistake only opened the door to, or "permitted" a, further consideration of rezoning. What *A–PAC, Chesapeake Ranch Club, Inc. v. Fulcher*, 48 Md.App. 223, 228, 426 A.2d 428 (1981) ("[A] mistake by the zoning authority ... merely *permits* ... the reclassification but does not require it ...."), and other cases establish is that, when a proponent of a traditional rezoning request meets his burden of establishing a prior zoning mistake, rezoning is then permitted. It is essentially a two-step process, though often both steps proceed simultaneously. Two questions must be answered: (1) Was there a prior zoning mistake? and (2) If so, is rezoning warranted?

In the case *sub judice*, the only issue argued on appeal is limited to the first step of the rezoning process, *i.e.*, the existence of a zoning mistake. While appellants do not challenge the second step, and apparently did not do so before Judge Horne, the record indicates that not only did appellees

meet their burden of establishing mistake, but, also presented substantial evidence that TR zoning was appropriate for the subject property. Moreover, the degree of deference due the Council in respect to that second step of the process is great, indeed. In rezoning matters under the change/mistake rule, once a mistake is established, the Council is in the same position as it was in at the time of the prior comprehensive rezoning, *i.e.*, before the strong presumption of validity had been created by that 1989 comprehensive rezoning. At that point, after a prior mistake has been established and accepted as fact by a legislative zoning entity,[9] that entity has the same power to rezone that it had at the time of the comprehensive rezoning. Thus, that decision as to that new rezoning is due the same deference that the prior comprehensive rezoning was due. In other words, if the legislative body grants a requested rezoning based upon a zoning mistake, as opposed to a change in the neighborhood, it is stating generally that it would have initially granted that zoning classification had it not relied upon erroneous and mistaken assumptions. That is the situation in the case sub judice. If, however, after a prior zoning mistake of the nature we have described is established and accepted as fact, the Council either does not change the classification or changes it to a classification not requested, it is stating that, even if it had had available the correct evidence and had thus not been subject to a misapprehension, it would nonetheless have so classified the property.

The Council's, *i.e.*, the legislative body's, second conclusion is due the same presumption of validity as comprehensive rezoning and must be, when challenged, dealt with as if it were a comprehensive rezoning. Stated another way, this second conclusion, regarding whether, and if so, how, the property is reclassified, is due great deference, because it is clearly a legislative action. As we said in *Beachwood,* the

---

**9.** In the case *sub judice,* the entity is the legislative body. In *Beachwood,* the legislative body had apparently delegated its legislative power to rezone to a Board. We were not there required to address the extent of the legislative powers of that Board.

County Council of Talbot County is "the legislature for the citizens of [Talbot] County.... [I]t speaks with the voice of the people.... [L]egislators [in respect to legislative matters, *i.e.,* rezonings] are answerable [generally] only to their electorates at the next election—not to the courts...." 107 Md.App. at 638, 670 A.2d 484 (citations omitted).

We hold that there was substantial evidence presented before the Council that its prior zoning conclusions had been based upon mistaken and erroneous assumptions that created a misapprehension as to the nature of the subject property's limitations as to growth allocation. Accordingly we shall affirm the trial court's affirmance that appellees met their burden of establishing a mistake. As no other issue was argued in appellant's brief, we otherwise affirm the trial court's affirmance of the action taken by the "Talbot County Council ... on March 22, 1994, in passing County Bill No. 529" (the ordinance granting the rezoning at issue in the case at bar). Judge Horne was correct.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**